JOSEPH ALTMAN *vs.* JEREMIAH S. McDONALD *et al.*

MARCH 27, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is a bill in equity for specific performance of a contract for the sale and purchase of real estate. After a hearing in the superior court upon amended bill, answer, replication and proof, a decree was entered denying and dismissing the bill. The cause is before us upon the complainant's appeal from that decree.

From the evidence the following facts appear. The respondents were the owners of certain improved realty in Providence which they had never advertised or offered for sale. The complainant was a dealer in real estate and previously had many transactions with or through a real estate agent named Braunstein. Braunstein, accompanied by another real estate agent named Besser, called on the respondents, represented that he had a buyer for the respondents' property and offered to purchase it for $6000. The respondents believed their property worth at least $6500, but, relying upon an appraisal at that time by Besser, consented orally to sell it to Braunstein for $6000. They demanded a deposit of $300 but none was paid by Braunstein or Besser at that time; nor was any written contract executed.

Within a day or two thereafter, Besser returned to show the property to one Woodworth Wright, explaining to the respondents that Wright was the man who was going to loan the buyer money on a mortgage. As a matter of fact, Wright was a prospective purchaser of the property. Wright later

agreed orally with Besser to buy the property for $7200 and made a deposit of $300 which was eventually turned over to Braunstein. At that time, August 7, 1937, the complainant had not signed any contract or paid any deposit to the respondents.

On the following Monday morning, August 9, Braunstein, acting as agent for the complainant, entered into a written agreement with the respondents whereby they agreed to sell, and the complainant to purchase, the property in question for the price of $6000, payable $300 down and the balance in cash or certified check on or before thirty days from that date. The respondents received $300 deposit on the signing of this agreement and agreed to convey the property by a warranty deed free and clear of incumbrances.

In the afternoon of the same day, the complainant himself signed an agreement with Woodworth Wright whereby the latter agreed to purchase the same property for a price of $7200. Except for $300 already deposited by Wright, this price was payable in cash or certified check on or before thirty days from the date thereof. Application was then made, apparently in Wright's name, to the Union Trust Company for a mortgage of $5000 to be guaranteed by the Federal Housing Administration, called F. H. A. At the same time, in case that mortgage was not approved by the F. H. A., another application for $4000 was made to the Union Trust Company.

On September 8, which was described by the complainant as the last day under the contract to complete the transaction, Braunstein, Besser and the respondents met at the title company's office at 2 o'clock, p. m., for the purpose of completing the transaction. The complainant was not present and never had met the respondents. Besser had notified Wright of the appointment and the latter was expected by Braunstein to be at the title company's office pre-

pared to take, as the nominee of the complainant, a deed directly from the respondents.

The respondents had come expressly for the purpose of performing their contract. They had previously, on September 7, paid off a mortgage of $3400 on their property, in order to have their title free and clear. A deed was prepared by the title company from the respondents to Wright, as directed, and they were ready to execute and deliver it, upon receipt of the purchase price in accordance with the terms of the contract. They waited from two to five o'clock for complainant to produce the purchase price, but both Braunstein, acting for complainant, and Besser relied entirely upon Wright to complete his transaction before the complainant would perform his part of the contract with respondents. Wright had not appeared by five o'clock. There was no check from the Union Trust Company representing the $4000 or $5000 mortgage; nor did Braunstein or anybody on behalf of complainant have enough money, or make any effort to complete the deal by taking a deed to the complainant rather than to Wright. The respondents refused to sign and leave the deed without obtaining the agreed purchase price; but, at the suggestion of the title company, consented to perform the contract at their home at any time that night and, in substance, invited Braunstein and Besser to come there. However, neither Braunstein nor the complainant appeared at the respondents' house that night.

On the next day, September 9, Braunstein and his lawyer, together with Besser and Wright went to the respondents' home avowedly to make a tender of the balance of the purchase price and to demand a deed from the respondents to Wright. However, no tender was actually made at that time. Braunstein testified that he had not more than $1900 in his pocket and further admitted that he did not show any of that amount to respondents or anybody. He did not tell Besser that he had such money; nor did he explain where

he obtained it. It was admitted that they had not stopped at the bank that morning to get any check or money.

The testimony of what happened at the respondents' home on that morning is confusing and largely conflicting. However, it is certain and undisputed that nobody, on behalf of the complainant, actually tendered any money whatever to the respondents; and also that no one had obtained from the bank, or otherwise had in his possession, the amount of cash or certified check to cover the difference between the $1900, if Braunstein had that amount, and the balance of the agreed purchase price. Braunstein testified that he did not offer the money because the respondents refused to carry out the contract. This is denied by the respondents, although they admitted that they were unwilling to go through with the transaction unless it were then in accordance with their legal obligation under the agreement. There was testimony on other matters which was helpful in determining, one way or the other, the weight to be given to the testimony of the various witnesses.

The trial justice found that the complainant had failed to establish, by a preponderance of the evidence, that he was ready and able to perform his part of the contract, as alleged, on either September 8 or 9. The complainant contends, in substance, that the trial justice, in making certain material findings of fact, misconceived or overlooked certain evidence which was uncontradicted; and that these findings and his final decision were contrary to the evidence and the law.

We have examined the evidence and we cannot agree with the complainant's contentions. The complainant erroneously assumes that certain testimony was undisputed and also that the trial justice was bound to believe the uncorroborated and self-serving testimony of Braunstein under the existing circumstances. There was some conflicting evidence and also other evidence from which inferences

could be drawn, which would justify the trial justice in not believing all of Braunstein's testimony. There can be no doubt, on the evidence, that Braunstein and the complainant were not ready, able or willing to perform, on September 8, the terms of the contract when Wright did not appear. The complainant did not expect or want, according to his own testimony, a deed from the respondents but only was interested in obtaining "the benefit", namely, the difference between the purchase price of $6000 and the price which Wright was expected to pay, namely, $7200. Otherwise he showed no willingness or readiness to take a deed directly from respondents.

Assuming that the respondents were bound by the contract to perform on September 9, or on any date prior to the commencement of this suit, the burden was clearly on the complainant to show that he was ready, able and willing to perform his part of the contract on that date. The trial justice found upon the evidence, some of which was conflicting and some of which was undisputed, that the complainant had not sustained this burden. Since there was no testimony from any officer of the bank, or any documentary evidence which would legally bind the bank, and since the complainant's representatives, in any event, did not have with them on September 9, or on any date thereafter, the necessary cash or certified check to complete the purchase price, we cannot say that the trial justice erred in his findings of fact or in his final decision. It may be noted also that the respondents offered to return the deposit of $300.

The complainant has cited and argued many cases largely concerning tender. We need not consider them because the instant cause is determinable solely upon the facts, and is distinguishable thereby from any case or authority which the complainant has presented. The question here was whether the complainant had proved that he was able and ready to perform his part of the contract irrespective of

tender or lack of tender. The trial justice substantially found, apart from questions relating to tender, that the complainant was not ready and able to perform his contract on either September 8 or 9 and this finding is supported by a reasonable view of the evidence. In our opinion the findings of fact and the decision are not clearly against the evidence or weight thereof or against the law.

The appeal of the complainant is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Wilfrid E. McKenna, Arthur Novogroski,* for complainant.

*Voigt, Wright, Munroe & Clason, Ernst T. Voigt,* for respondents.