Susie Meloccaro *et al. vs.* Elvira Petteruti *et al.*

MARCH 21, 1958.

Present: Condon, C. J., Roberts, Andrews and Paolino, JJ.

CONDON, C. J. This is a bill in equity for specific performance of a written agreement to purchase certain real

estate particularly described in said agreement. The case was heard in the superior court on bill, answer and oral proof and resulted in a decision for the complainants. Thereafter a decree in accordance with such decision was duly entered and from that decree the respondents claimed an appeal to this court. As reasons of appeal they allege that the decree is against the law and the evidence and the weight thereof.

The death of complainant Rose Picerne since the commencement of the case has been suggested on the record and her husband Romeo S. Picerne in his capacity as executor of her estate has been substituted in her place.

The written agreement is in evidence as complainants' exhibit 1. Certain paragraphs thereof which are pertinent to the instant controversy are as follows:

"Witnesseth:

That the Sellers for and in consideration of the covenants hereinafter mentioned agree to sell and the buyers agree to buy that parcel of land located on the southeasterly side of New London Turnpike in the City of Cranston, County of Providence, State of Rhode Island and described as follows:

Beginning at a point on the southeasterly side of New London Turnpike a distance of 360 feet more or less from the tangent of the intersection of Hill Top Drive and New London Turnpike, thence running southeasterly 188.262 feet more or less bounding easterly by other land of these grantors to an angle, thence turning an interior angle of 104° and running in a westerly direction bounding southerly by other land of these grantors 159.06 feet more or less to an angle, thence turning an interior angle of 101°03'22" and running in a northwesterly direction bounding westerly by other land of these grantors a distance of 204.02 feet more or less to an angle, thence turning an interior angle of 82°07'38" and running in an easterly direction bounded

northerly by New London Turnpike a distance of 146.67 feet to a stone bound, thence turning an interior angle of 162°49′ and bounded northerly by New London Turnpike, thence running easterly 106.97 feet to the point or place of beginning. Said lot contains approximately 41,000 square feet more or less; being lot No. 8 on that plat entitled 'Subdivision of Lot B of Oak Hill Terrace, Cranston, R. I. belonging to Susie Meloccaro and Rose Picerne by Waterman Engineering Co. Aug. 1947' Less the frontage by the entire width abutting New London Turnpike which was condemned by the State of Rhode Island for highway purposes.

The Buyers agree to purchase the real estate aforesaid and to pay to the sellers $30,000.00 as follows:

$2,500.00 upon the signing of this agreement, the balance less an agreed upon commission of 5% and attorney's fee of $500.00 which is payable to Merlyn A. DeConti not later than July 11, 1954 nor earlier than two months from the date of this agreement.

\* \* \*

The said sellers hereby agree that they would convey title to the Purchasers by a sufficient and proper deed free and clear of all encumbrances. The parties hereto agree that the taxes will be adjusted pro rata as of the date of delivery of the deed.

It is understood between the parties hereto that this purchase price does not include the purchase of the building on said property, being a gas station so called, since this is to the property of the Socony Vacuum Oil Co., the tenant of the Sellers.

It is further agreed between the parties hereto that the Sellers shall notify said tenant, Socony Vacuum Oil Co. of Boston, Massachusetts, as set forth in the term of the lease between the sellers and the Socony Vacuum Oil Co. that they must vacate the premises by July 10, 1954 at the latest, or within 60 days of the date of this agreement if authorized under this lease.

The sellers covenant that in the event the lease cannot be terminated this agreement shall be null and void and the deposit paid hereunder shall be returned to the buyers."

The lease referred to therein provided among other things not pertinent to the instant case that the filling station which the lessee erected on the leased premises should remain its property; that the lessee should have the right to renew the lease annually unless notified to the contrary sixty days prior to its expiration; that it should have a prior right to purchase the premises in the event the lessors contemplated a sale to a third party; and that it should have the right for thirty days after termination of the lease to enter upon the premises and remove its property. The evidence is undisputed that the lessors gave the lessee the requisite sixty days' notice and that the lessee notified the lessors in turn that it did not desire to avail itself of its right to purchase. However, it further appears from the evidence that the lessee did not remove its property from the premises until the lessors brought an action of trespass and ejectment against it.

The precise date when the lessee actually removed its building from the premises is not expressly stated in the transcript but it is reasonably inferable that it could not have been until September 1954. In any event the evidence is undisputed that the lessee did not vacate the premises either in July or August and that it was receiving rent from its tenant Edward V. Ursillo after July 10, 1954. He testified that he operated the gas station and sold Socony gasoline there until either August 16 or 17. It also appeared that he was a brother of respondent Elvira Petteruti.

On July 8, 1954 complainants through their attorney offered to close the sale transaction at the Real Estate Title Insurance Company's office on July 12 since July 11 fell on Sunday. In accordance with such suggestion the parties accompanied by their attorneys met there and complainants

tendered to respondents a duly executed warranty deed dated and acknowledged on July 7, 1954. The description therein of the granted premises does not correspond with the description in the written agreement and the bill of complaint but reads as follows:

> "That certain lot of land, with any buildings or improvements thereon, situated on Oaklawn Avenue and New London Turnpike, in the City of Cranston, in the State of Rhode Island, laid out and designated as lot numbered 8 (eight) on that plat entitled 'Sub-Division of Lot B on Oak Hill Terrace Cranston, Rhode Island Belonging to Susie Meloccaro & Rose Picerne By Waterman Engineering Co. Aug. 1947', which plat is recorded in the office of the City Clerk in said City of Cranston in Plat Book 13 at page 40, and on Plat Card 360, Excepting therefrom the portion taken for highway purposes.
>
> Said premises are conveyed subject to the restriction that no building, construction sign, advertising media or business or equipment of any sort shall be placed, erected, constructed or used on said premises within thirty (30) feet of said Oaklawn Avenue or New London Turnpike. This restriction shall be binding upon said grantees, their heirs and assigns forever."

Apparently this variance was overlooked at the trial. However, it is an important part of the evidence and will be considered later. At this point we are concerned only with certain contentions which respondents have briefed and argued. They contend that their refusal to accept the deed tendered on July 12 was justified because the lessee continued in possession of the premises and was actually operating the gas station by its tenant Ursillo. They argue that this circumstance amounted to a failure on the part of complainants to perform their obligation under the written agreement to deliver a title not later than July 11, 1954 free and clear of all encumbrances.

In reply complainants contend that the agreement did not bind them to obtain the removal of the lessee's prop-

erty from the leased premises before July 12 but only to notify it that its lease was terminated on July 10. They point out that under the terms of the lease the lessee was allowed a period of thirty days after the termination of the lease to remove its property. The respondents knew of this provision when they entered into the written agreement which was drafted by their counsel. The complainants contend that in the light of such knowledge the construction which respondents seek to put upon the agreement is unreasonable. Moreover, they claim that the language of the paragraph providing for notifying the lessee is plain and needs no construction, but if it does it must be construed most strongly against respondents and its ambiguity resolved accordingly since it was drafted by their counsel.

The paragraph of the agreement around which the controversy has arisen reads as follows:

> "It is further agreed between the parties hereto that the Sellers shall notify said tenant, Socony Vacuum Oil Co. of Boston, Massachusetts, as set forth in the term of the lease between the sellers and the Socony Vacuum Oil Co. that they must vacate the premises by July 10, 1954 at the latest, or within 60 days of the date of this agreement if authorized under this lease."

That language is not entirely clear. Standing alone it seems to say that the sellers must notify the lessee to vacate the premises by July 10, 1954, but if read as it must be in the context of the whole agreement and with a knowledge of the provisions of the lease to which it expressly refers it submits to a reasonably different construction.

We are of the opinion that it means the sellers must notify the lessee to vacate "as set forth in the term of the lease * * *." That would be thirty days after the termination of the lease on July 10, 1954. When complainants notified the lessee that its lease was terminated on July 10, it was equivalent to a notification that within thirty days thereafter it should remove its property from the premises. Whether it continued to operate the gas station during that

period would not make its right to continue in occupancy unlawful so long as it removed its property before the thirtieth day expired.

Hence on July 12, the day their agreement to purchase was to be performed, the respondents were not legally entitled to repudiate the agreement for the reasons which they gave complainants. What the lessee did or failed to do after the thirty-day period expired does not concern us in the instant case. The respondents' right to repudiate their agreement must be determined as of July 12, 1954. At that time complainants had performed their obligation under the agreement to notify the lessee that its lease was terminated on July 10 and to vacate the premises as set forth in the terms of the lease. They were therefore entitled to specific performance of the agreement if they were ready and able to deliver a deed for the land described in the agreement free and clear of all encumbrances.

After examining the deed which was tendered to respondents and comparing it with the description set out in the written agreement and the bill of complaint, we are of the opinion that complainants have failed to prove by clear and convincing evidence that they are entitled to compel respondents to accept such deed in performance of their agreement. Aside from the failure of the deed to describe the granted premises in the language of the agreement and the bill of complaint, it contains a restriction upon the grantees' absolute title in fee simple which does not appear anywhere in the agreement. Besides being a fatal deviation from the language thereof it constitutes a substantial encumbrance and therefore the deed does not conform to the complainants' obligation to deliver a title free and clear of all encumbrances. *Scott* v. *Smith,* 48 R. I. 66.

In the circumstances we must hold that the complainants have failed to prove that they were ready and able on July 12, 1954 to fully perform their part of the agreement. See *Altman* v. *McDonald,* 64 R. I. 311. Hence the decision of

the trial justice was clearly against the weight of the evidence and therefore erroneous. On our view the complainants were entitled to compel specific performance of the agreement alleged in their bill of complaint but they are not entitled to compel the respondents to accept delivery of the deed which has been tendered and to pay the balance of the consideration set out in the agreement. To decree specific performance in such circumstances would be clearly contrary to equity. See 49 Am. Jur., Specific Performance, §109.

The respondents' appeal is sustained, the decree appealed from is reversed, and on March 31, 1958 the parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*Aram A. Arabian,* for complainants.

*Swan, Keeney, Smith & Jenckes, Marshall Swan, John B. Dillon,* for respondents.