ANTONIO PAOLILLI *vs.* NICOLA PISCITELLI.

JULY 2, 1923.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1) Contracts. Penalties. Liquidated Damages. Specific Performance.*

A "sale contract" for the purchase and sale of real estate acknowledged receipt of $200 from the buyer as a "binder " seller to remain in possession of the property for a year, the balance of purchase price of $6,000 over the $200 to be paid when deed was ready and provided that if buyer refused to accept at the end of the year he should lose the $200 and if seller refused to carry out the contract "he must double the binder."

*Held,* that the substance of the transaction was the sale of the property and the contract was not in the alternative.

*Held,* further, that the provision for the payment of $200 was of the nature of a penalty and not an agreement for liquidated damages, and complainant buyer was entitled to specific performance.

*(2) Contracts. Penalties. Liquidated Damages.*

The question whether a deposit or other payment is to be regarded as a penalty or as liquidated damages is to be decided upon consideration of the provisions of the whole agreement in view of the circumstances in each case, and the intention of the parties as thus disclosed is the decisive test.

BILL IN EQUITY for specific performance. Heard on appeal of complainant and sustained.

STEARNS, J. This is a bill in equity to enforce specific performance of a contract for the sale of land.

The cause was heard in the Superior Court on bill, answer and oral proof, and is now in this court on the appeal of the complainant from a final decree dismissing the bill of complaint. The reason of appeal is that the decision upon which said decree was based was erroneous and against the law.

July 15, 1920, complainant entered into a written contract with the respondent for the purchase and sale of a certain parcel of land and the building thereon. The parties are Italians. The contract, which is in the Italian language, was drawn and written by one Cipolla, a steamship agent. The translation of the material parts thereof is as follows: "Sale Contract between Nicola Piscitelli and Antonio Paolilli and wife Filomena. Mr. Nicola Piscitelli declares

that he has received the sum of Two hundred ($200.00) Dollars from Mr. Antonio Paolilli, as a binder of his house and lot at No. 296 Pocasset Avenue, corner of What Cheer Avenue, Providence, R. I., it being well understood that the sale must be effectuated within one year from today, and during this time Mr. Piscitelli to remain always in possession of the property.

"The price set for said property is $6,000.00 of which $200.00 is being paid at the moment that this contract is signed and the balance to be paid when the complete deed shall be made.

"If Mr. Paolilli refuses to accept and fulfill said contract at the end of one year he shall lose the sum he has paid as deposit, that is $200.00. On the other hand if Mr. Piscitelli refuses to effectuate said sale he must double the binder, that is deliver to Mr. Paolilli the sum of $400.00."

There is a question raised in regard to one part of the translation, respondent claiming that the phrase "the sale must be effectuated" when correctly translated is "the sale should be effectuated."

Complainant for ten years had kept a music store on a side street, near the store of respondent which was on the corner of this side street and Pocasset avenue. This section of the city is the center of a large Italian population and Pocasset avenue is the main business street therein. Respondent kept a hardware store on the ground floor of his building and with his family lived in the upper part of the building. Complainant, who wanted to get a better location for his store, was approached by a real estate agent, who was acting for respondent, in regard to the purchase of respondent's building. As a result, complainant and respondent met and entered into the agreement above mentioned. The period of one year for the performance of the contract, was agreed upon at the suggestion of respondent in order that respondent might have time to dispose of the stock of hardware in his store and to buy or build another store for himself and move elsewhere. Respondent did

buy another building which he altered into a store and house.

There is controversy in regard to the person who first suggested the clause in regard to the deposit of $200. Complainant testified that after the parties had reached an agreement in regard to the sale he suggested there should be a penalty for nonperformance. Respondent asserts that he was to have a year in which to decide whether he would sell complainant the property or give him the money ($400); that he talked about damages, but that neither he nor any one of the other persons present made any attempt to calculate or fix the possible damages to either party for the failure of the other party to carry out the contract.

Cipolla testified that respondent asked how much complainant was going to pay as a deposit, and it was agreed that $200 should be paid and then the next question was if there was to be any fine or penalty paid if one of the parties refused to buy or sell; that the talk then was "if Paolilli fail to buy—he lose $200.—and then on the other side Piscitelli says 'In case I refuse to sell I have to double up the deposit given me to $400.' ", that there was no talk about damages at all nor was any attempt made to figure out what possible damages there might be; that the only talk was about the $200 penalty. In cross-examination the witness said there was no talk of penalty or damage or fine, that he does not remember the exact words that were used by the parties but the agreement between them was just as it was written in the contract.

The trial justice, on issues of fact framed, found there was no specific agreement that the contract should be drafted in the alternative so that either party might pay $200 to the other instead of carrying out the contract; that the damages of either party in case of default by the other were not easily ascertainable; and that the primary object of the parties to the contract was the sale by the respondent and the purchase by the complainant of the property in question.

From all of the testimony the reasonable conclusion seems to be that neither party, at the time the contract was made, considered the clause about the loss by one party or the other of the sum of $200 of any particular importance. It was the result of an afterthought and was added to the agreement with the idea apparently that such a clause was customary in contracts between Italians and that it would give greater binding effect to the agreement. The primary object of the agreement was the purchase and sale of this particular property and at that time each party desired and expected to carry out the transaction. Complainant was not looking for a possible profit from a deal in real estate. He wanted this particular location for the conduct of his business. It was not until some months thereafter that respondent changed his mind and refused to make a conveyance.

The trial justice in construing the agreement decided correctly, that this was not an alternative contract, that is a contract whereby either party could elect either to perform the contract or to pay a stipulated amount of money. There is no rescript but from the transcript of testimony it appears that the trial justice thought the provision in question was in reality intended to be a penalty, but in view of the fact that the original $200 was a deposit, he considered he was bound as a matter of law, on the authority of *Cavanaugh* v. *Conway,* 36 R. I. 571, to hold the provision to be one for liquidated damages and not for a penalty. This was error. In the Cavanaugh case the question of the right to specific performance was not the main question before the court, but was incidental thereto. It was an action at law in assumpsit brought to recover a commission by a broker authorized to sell certain real estate for a fixed amount; the broker procured a customer who agreed to buy at the stipulated price; a deposit of $100 was made by the customer, to be applied as a part of the stipulated price if the agreement was carried out, but said sum was "to be forfeited as and for liquidated damages" on the failure or refusal of the customer to perform the contract.

In the Superior Court, plaintiff was nonsuited on the ground that the agreement gave the customer the right either to buy at $7,000 or to pay $100 as liquidated damages if she failed to buy, and that consequently the broker had not earned his commission by producing a customer willing and able to purchase on the terms prescribed by the seller. The case was heard in this court on the plaintiff's bill of exceptions which were overruled. It was held that the use of the terms "penalty" or "liquidated damages" was not decisive of the nature of the payment provided for by the contract, but that this question was one to be decided upon consideration of the facts and circumstances of each case; that the question was to be determined by construction of the particular contract and in accordance with the intention of the contracting parties, and that the facts presented a case for a construction in favor of liquidated damages, and were sufficient to justify such a construction. As stated on page 576 of the opinion, the agreement was an agreement to purchase the property for the minimum sum for which defendant offered to sell, but that it limited the liability of the prospective customer if she failed to carry out her part of the contract to the $100 deposited which was to be retained by the other party "as and for liquidated damages." The contract was construed to be an alternative contract with the right of election either to perform the contract or to pay a fixed sum for failure to perform, which sum the court found to be properly designated in the contract as liquidated damages and not to be a penalty. Having found the contract to be in the alternative this was decisive of the case. The additional finding in regard to the nature of the payment provided for, in no way changed the result; for if the contract was in the alternative, by paying the $100 the person in default would thereby be relieved of any other liability whether the sum thus paid was regarded either as a penalty or as liquidated damages.

The *Cavanaugh* case is not an authority for the proposition, nor is it the law, that a deposit thus made, as a matter of law

is to be held in every case to be liquidated damages. The
(2) question whether a deposit or other payment is to be regarded as a penalty or as liquidated damages is to be decided upon consideration of the provisions of the whole agreement in view of the circumstances in each case, and the intention of the parties as thus disclosed is the decisive test. In *Dike* v. *Greene*, 4 R. I. 285, the proceeding was by a bill in equity to enforce specific performance of a contract of sale of a house and lot. At page 294, AMES, C. J., said: "the principle upon which the cases turn is, that when once it appears that the main purpose of the parties to a contract is, the sale and purchase of an estate, any sum that is named in it to be paid by either in the event of his neglect or refusal to perform his part of the agreement, is construed as a penalty to insure the performance of the contract in the option of *the other* party, and not as constituting the agreement an alternative one, in the sense of giving him the option to perform his contract or to forfeit the penalty."

The court then quotes with approval the statement of Mr. Justice STORY that in cases of this sort the courts look to the substance of the transaction and the primary object of the parties, and finding that this requires a specific performance a penalty clause will be treated as a mere security for the due performance of the contract.

The above statement of the law is in accord with the authorities and is applicable to the present case. When the contract was made, the substance of the transaction and we believe the primary object of both parties was the sale of the store and lot. The contract was not in the alternative.

There is nothing in the terms of the contract which shows that either party had the option to perform the contract or to pay the sum of $200. The written agreement is designated as a "sale contract"; the respondent acknowledges the receipt of the $200 to be a "binder" which statement according to common usage, presumably was intended to clinch the purchase and sale. The provision that respondent was to remain in possession was unnecessary and super-

fluous if the contract was to be in the alternative at the end of one year when the deed was to be made.  The provision for the payment of $200 was of the nature of a penalty, and was not an agreement for liquidated damages; it was not a substitute for the performance of the contract of sale but was an inducement to secure performance.  Complainant is entitled to his remedy in equity by specific performance.

The complainant's appeal is sustained, the decree of the Superior Court appealed from is reversed.

On July 7, 1923, at nine o'clock, a. m., Standard time, the parties may present a form of decree in accordance with this opinion.

*George F. Troy,* for complainant.

*McGovern & Slattery, Fred B. Perkins,* for respondent.