UNIVERSAL WINDING COMPANY *vs.* AMIL PARKS.

MARCH 6, 1959.

PRESENT: Condon, C.J., Roberts, Andrews, Paolino and Powers, JJ.

POWERS, J. This is an employer's petition to review an agreement, entered into under the workmen's compensation act, on the ground that the employee's incapacity for work on account of the injury set out therein has ended. After a hearing before a trial commissioner on an agreed statement of facts a decree was entered ordering the suspension of compensation payments. From the decree of the full commission affirming the decree of the trial commissioner the respondent has appealed to this court.

The material parts of the agreed statement of facts are as follows: That on June 1, 1953, while employed by petitioner as a hand screw operator at an average weekly wage of $64.30, the respondent received an injury which totally incapacitated him until October of that year when he returned to work for petitioner as an inspector; that a supplemental agreement was then entered into whereby he was to be paid partial incapacity compensation at variable rates; that at the present time he is not disabled from performing the job of inspector by reason of the injury referred to in the agreement but is totally disabled for other reasons not related to his injury; that the job of inspector

in petitioner's employ is available to respondent; that the present average weekly wage for a forty-hour week for a worker with respondent's seniority in the inspector's job is $64.40; that such an inspector employed on June 1, 1953 would have earned an average weekly wage of $53.20 for a forty-hour week; and that the present average weekly wage for a forty-hour week for a hand screw operator with respondent's seniority is $82.80.

The respondent states in his brief: "For the purpose of this proceeding * * * the issues are the same as if respondent were now working in the capacity of 'inspector', and for the sake of simplicity the argument is presented as if such were the case."

The decree of the trial commissioner, which was affirmed by the full commission, contains the following findings:

"1. That the respondent has an earning capacity at present of $64.40 a week.

"2. That the respondent is fully able to perform the work of an inspector.

"3. That at the present time the respondent has regained his earning capacity and is able to earn wages equal to or in excess of that which he was earning when injured."

Upon these findings the commission suspended further payments of compensation.

The controlling statute, general laws 1956, §28-33-18, reads:

"While the incapacity for work resulting from the injury is partial the employer shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of the difference between his average weekly wages, earnings or salary, before the injury and the weekly wages, earnings, or salary which he *earns* thereafter, but not more than twenty-two dollars ($22.00) a week; provided, however, if, after his injury, the employee is unable to obtain any work to determine his earning capacity or to prove the amount of his loss of earning capacity with reasonable definiteness, then the workmen's compensation commission shall have

the power in the interest of justice to fix the dollar value of the weekly earning capacity which said employee has, which dollar value shall be reasonable, having due regard to the evidence and all other pertinent factors presented at the hearing. In such latter case the employer shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of the difference between his average weekly wages, earnings or salary before the injury and said estimated dollar value of weekly earning capacity, but said employee shall not receive as partial disability compensation more than twenty-two dollars ($22.00) per week; provided, further, however, that where a partially incapacitated employee has made a bona fide attempt without success to obtain suitable work he is able to perform and the employer is unable to offer the employee suitable work he is able to perform or is unable to present evidence that such suitable work is available elsewhere, then said employee shall receive as weekly compensation the amount payable for total incapacity.

"In the event partial compensation is paid, in no case shall the period covered by such compensation be greater than eight hundred (800) weeks from the date of the injury." (italics ours)

In his brief respondent states his position as follows: "The amount of compensation should be determined by comparing pre-injury earnings with the wages that would have been paid the respondent as injured, taking wage levels of the same period as that used to calculate pre-injury earnings." He further states that "the respondent should rightfully receive compensation payments equal to 60% of the difference between his earnings as a hand screw operator in June 1953 ($64.30) and the earnings of an inspector in June 1953 ($53.20)." His alternative position is that the employee's present earnings are only some evidence of his earning capacity to be considered in connection with other factors which he might be able to show as more truly reflecting such earning capacity.

In support of his position respondent calls to our attention decisions in other jurisdictions, notably *Whyte* v. *In-*

*dustrial Comm'n,* 71 Ariz. 338, for the first of his contentions, and *Peak* v. *Nashua Gummed and Coated Paper Co.,* 87 N. H. 350, and *Carignan* v. *Winthrop Spinning Co.,* 95 N. H. 333, for the proposition that actual earnings are in fact only some evidence of the employee's present earning capacity.

The pertinent facts in *Whyte* v. *Industrial Comm'n* are that in 1942 the claimant was employed as a steelworker when injured and was earning an average monthly wage of $241. He was totally incapacitated for some time, but later while still partially incapacitated he returned to work as a timekeeper earning $223 per month. At the time of his accident this position paid $165 per month. The Arizona Industrial Commission awarded Whyte 55 per cent of the difference between $241 and $223 which the position of timekeeper paid at the time of the hearing. On appeal by the employee the supreme court of Arizona in a three-to-two decision set aside the award of the commission and held that the employee was entitled to 55 per cent of the difference between his earnings when injured and the average monthly earnings of a timekeeper at the time of the accident.

The pertinent provision of the statute under which the Arizona court reached its decision reads as follows: "* * * where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter * * *." In reaching its conclusion the majority relied strongly on the construction of the word "thereafter," stating at page 345:

> "We think it reasonable and logical to conclude therefore that in defining the other predicate as 'the monthly wages he is able to earn thereafter' the word 'thereafter' was intended to mean and must of necessity be construed to mean, 'immediately thereafter' and that the second predicate based upon his new employ-

ment must be determined by ascertaining what wages others in the same or most similar class in the same or most similar employment in the same or similar locality were receiving at the time the injury occurred. This is the only construction that will yield an unvariable result regardless of surrounding circumstances, and harmonizes with all of the authorities that changes in economical conditions may not be permitted to affect the amount of compensation due an injured employee based upon loss of earning capacity."

Counsel for respondent in the instant case argue that the substitution of the word "earns" for the phrase "is able to earn" in public laws 1950, chapter 2628, does not materially alter the principle, that compensation is awarded only for loss of earning capacity, approved by this court in a long line of decisions beginning with *Weber* v. *American Silk Spinning Co.*, 38 R. I. 309, and they conclude that the decision of the Arizona court in *Whyte* v. *Industrial Comm'n, supra,* is authority for their position.

Assuming without deciding that the word "earns" and the phrase "is able to earn" are identical in meaning rather than similar, we cannot agree that the decision in the *Whyte* case is controlling here. We are bound to consider every provision of the Rhode Island workmen's compensation act in determining the intention of the legislature as it relates to the formula to be used in awarding compensation for partial incapacity.

The 1950 amendment which substituted the word "earns" for the phrase "is able to earn" further amended the statute by adding the provision: "* * * if, after his injury, the employee is unable to obtain any work to determine his earning capacity or to prove the amount of his loss of earning capacity with reasonble definiteness, then the director of labor, the chief of the workmen's compensation division, and the hearing officers of said division in the first instance * * * shall have the power in the interest of justice to fix the *dollar value of the weekly earning capacity* which said

employee has, which dollar value shall be reasonable, having due regard to the evidence and all other pertinent factors presented at the hearing." (italics ours)

Section 28-35-45 further provides: "At any time after the date of the approval of any agreement or at any time after the date of the entry of any decree concerning compensation * * * any agreement, award, order, finding, or decree may be from time to time reviewed by the workmen's compensation commission * * * upon the ground that the incapacity of the injured employee has diminished, ended, increased or returned * * *."

Section 28-35-46 then provides: "Before an employer may discontinue, suspend or reduce compensation payments whether they are being received under an agreement, award, order, finding or decree, the employer shall notify the commission and the employee of his intention to discontinue, suspend or reduce payments and the reason therefor. Such notice of intention to discontinue, suspend or reduce payments must be given fifteen (15) days prior to the proposed date of discontinuance, suspension or reduction; provided, however, that where an employee has returned to work at an average weekly wage equal to or in excess of that which he was earning at the time of his injury, the notice of intention to discontinue, suspend or reduce payments herein provided for may be given five (5) days prior to the proposed date of discontinuance."

Continuing, §28-35-51 provides "that in those cases where the commission is satisfied that the employee has returned to work at an average weekly wage equal to or in excess of that which he was earning at the time of his injury, even though said employee disputes the claim of the employer, the commission shall advise the employer and the employee that compensation payments may be suspended pending a hearing by the workmen's compensation commission if such employee requests a hearing in accordance with the provisions of this chapter."

We are persuaded that the legislature has not altered the principle laid down in *Weber* v. *American Silk Spinning Co., supra,* that compensation is awarded only for loss of earning capacity, but by virtue of the foregoing provisions has effectively provided that proof of average weekly wages or earnings equal to or in excess of the average weekly wages or earnings before the accident, regardless of the type of work to which the employee returns, is conclusive that incapacity has ended.

In the light of the above conclusion, the New Hampshire doctrine that actual earnings are in fact only some evidence of the employee's present earning capacity has no valid application in construing the provisions of the Rhode Island workmen's compensation act. However, it is argued by counsel for respondent that the result achieved in that and other jurisdictions is more realistic and equitable. But be that as it may, it is not for this court to legislate by judicial interpretation what we think would be a more equitable result than that provided by the clear and unambiguous terms of the statute. *Bloomfield* v. *Brown,* 67 R. I. 452.

In the instant case the respondent concedes that his employment as a factory inspector results in a weekly wage slightly in excess of what he was earning before the accident. On this concession the commission correctly granted the employer's petition.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

ANDREWS, J., did not participate in the decision.

*Higgins, Cavanagh & Williamson, Joseph V. Cavanagh,* for petitioner.

*Letts & Quinn, A. Peter Quinn, Jr., Jerome B. Spunt,* for respondent.