FRANKLIN C. REED *vs.* GEORGE L. RATHBUN *et al.*

OCTOBER 24, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This is a bill in equity praying for specific performance of an agreement executed by respondent George L. Rathbun for the sale of certain real estate of which he is a joint tenant, or in the alternative for a decree of specific performance against said respondent of his undivided half. The cause was heard on bill, answer and proof before a superior court justice and resulted in a decree

denying and dismissing the bill of complaint. It is before us on the complainant's appeal from said decree.

It appears from the record that respondents George L. Rathbun of the town of Coventry in this state and his brother Frank J. Rathbun of Westminster, Vermont, are joint tenants of a substantial parcel of real estate located in said Coventry which they inherited on the death of their father. The third respondent, Mildred Rathbun, is the wife of Frank and was joined in the event of any undisclosed interest. For convenience the respondents will hereinafter sometimes be referred to as George, Frank and Mildred respectively.

The testimony is in sharp conflict except that all parties and their witnesses agreed that complainant intended to purchase the interest of both brothers.

It is uncontradicted that in the fall of 1958 Carlyle Still, a real estate broker, approached respondent George to obtain an exclusive agency for the sale of the property, and that George refused to sign any brokerage agreement with Still although there is some indication that Still left with the understanding that he had an oral exclusive authority until April 1, 1959. Both agree that it was understood George could not sell the property without his brother's consent.

The record further discloses that complainant became interested in the purchase of the property and called on George early in January 1959. He was accompanied by James J. Iuliano, a real estate broker. The complainant testified that George informed him he could not sell without his brother's consent, that the brother was not anxious to sell, but that he, George, was if a price of $38,000 net could be obtained for the property. Thereafter, specifically on January 20, 1959, complainant and Iuliano called on respondent Frank in Westminster, Vermont, where they attempted to persuade him to sell. This conversation occurred in the presence of respondent Mildred, in the middle of an open

field in the late afternoon of a cold day, and lasted from forty-five minutes to an hour. The complainant, corroborated by Iuliano, testified that although Frank refused to sign an agreement or to accept a check for $500 as a binder, he nevertheless assured them that if they could obtain George's agreement they should send the papers back and he would sign them.

The respondent Frank, corroborated by his wife, flatly denied giving any assurance, stating that he was not anxious to sell and that although he knew George was because he might be in need of medical expenses, he, Frank, saw no necessity for this and would advance his brother "a thousand or two thousand" dollars, if necessary for such expenses. It is a fact that complainant and his agent were not invited to enter the house and from all the circumstances surrounding this conversation the trial justice was impressed with and noted the lack of hospitality to which complainant and Iuliano were subjected.

On January 22, complainant, again accompanied by Iuliano, called on George and told the latter of their visit to his brother in Vermont. George expressed surprise that no time had been lost in calling on Frank and it was then that complainant and Iuliano first learned of Carlyle Still. They testified that George had given Still an oral exclusive until April 1 and for that reason was unwilling to sell until after that date.

It appears that complainant then sought out the agent Still and offered to pay the latter's commission in order to effect a prompt sale.

It is uncontradicted that on January 31, 1959 George and Still went to complainant's office in Coventry where in their presence and in the presence of Iuliano complainant put through a telephone call to Frank in Vermont. George talked with his brother but denied that he received authority to sell, stating that Frank had merely said they would talk about it. The others, however, testified that

following the conversation with his brother, George advised them that he had authority to execute an agreement of sale. Frank corroborated his brother, adding that he had told George to sign nothing.

Following the telephone conversation between the brothers, an agreement for the sale of the property for $38,000 net was signed by complainant as purchaser and respondent George as seller. Although the agreement specifies "George and Frank Rathbun and wife Mildred Rathbun" it contains no reference to George as agent for the others. A check for $500 payable to "George Rathbun & Frank Rathbun" drawn by complainant was delivered to George on the execution of the agreement of sale.

Testifying as to his participation in the events surrounding the transaction on January 31, George stated in his deposition that he went to complainant's premises believing he would have an opportunity to consult an attorney; that Still and Iuliano would not permit him to leave until he had signed the agreement; that he was a sick man under the care of a doctor; and that he signed the agreement and accepted the check in order, as he says, "to get out of there."

In substance he stated that he signed the agreement and accepted the check under duress. The trial justice in reaching his decision stated that he did not believe George had been threatened in any way, and otherwise made it clear that he gave no credence to the testimony contained in George's deposition.

The day after the papers had been signed at complainant's business establishment, specifically on Sunday, February 1, 1959, Still called on Frank at the latter's home in Vermont. He had with him the agreement signed by complainant and respondent George, and the purpose of his visit was to obtain the signatures of Frank and his wife Mildred. Still testified that Frank was unwilling to sign and when reminded that on the previous day he had agreed to

the sale for $38,000 net, respondent Frank replied, "Well, I have changed my mind, I am not going to sign it." In any event the agreement was not signed.

The testimony of Frank sharply conflicts with that given by Still as to what transpired when the latter called on him the day after the telephone conversation with his brother George. He contradicted Still on every material point and, although not asked if he had told Still that he had changed his mind since the conversation of the previous day with his brother, he stated flatly that he had not authorized his brother to sign the agreement and in fact had told him to do nothing. Frank's testimony regarding what took place between Still and him was corroborated by his wife Mildred.

During the cross-examination of respondent Frank, counsel elicited the information that at some time Frank had discussed a possible sale of the property with a purchaser known to said respondent as Quade. Whether his negotiations with Quade were prior or subsequent to his conversation with Still does not appear, since respondents' objection to this line of inquiry was sustained by the trial justice. In reply to complainant's question regarding the price Quade was willing to pay, the witness responded, "I don't consider that any of your business."

The record establishes that some time after the negotiations of January 31, 1959, George consulted an attorney, and the latter returned the check for $500 to complainant together with a letter dated February 21, 1959, advising complainant that George considered the agreement invalid and void.

The trial justice, although making it clear that he gave little or no credence to the testimony of George and believed that his conduct was voluntary, also made it clear that he was favorably impressed with the testimony of the brother Frank. He observed that Frank was hostile to the sale from the first time he was approached by complainant and Iuliano. He further found that Frank never changed

his attitude and reached the conclusion that George had not been authorized to act as agent for his brother. On the basis of his findings, he denied complainant's prayer for specific performance of the entire parcel.

The trial justice also denied the relief sought by complainant in his second prayer, namely, that George be ordered to convey his undivided interest to complainant.

The complainant assigned six reasons of appeal, but has elected to brief and argue them in the posture of two issues, which he sets out as follows: "1. The Superior Court made a prejudicial error in refusing to accept the offer of proof and inquiry into the issue of whether the respondents had available a better offer for the sale of the real estate involved as bearing on their credibility. 2. Even if the findings of fact as to the refusal of respondents Frank and Mildred Rathbun are affirmed, or not disturbed by this Court, the complainant is still entitled to affirmative relief and the benefit of his bargain as prayed for in his bill of complaint against respondent George Rathbun."

It is clear from the manner in which complainant poses the first issue that he recognizes that he has not been prejudiced by the decision of the trial justice denying specific performance against all respondents, if the trial justice did not err in refusing to permit counsel for complainant to inquire about the details of Frank's negotiations with a person named Quade. Specific performance against all respondents could be decreed only if the trial justice found that George had been authorized to act for all. The trial justice found that no such authority had ever been given. He made it clear that he believed Frank and found that the latter had not authorized his brother George to sign the agreement on his behalf.

The complainant contends, however, that if he had been permitted to inquire into negotiations with another party he could have shown a profit motive, thus impeaching the credibility of the witness Frank. We are of the opinion

that in sustaining respondents' objection to this mode of inquiry the trial justice did not err. He observed the witness, marked his demeanor, referred to circumstances consistent with the witness' account of what happened, and concluded that he was entitled to belief. It is incumbent upon the complainant in a bill for specific performance to show by clear and convincing evidence that specific performance should be decreed. *Meloccaro* v. *Petteruti*, 87 R. I. 211, 139 A.2d 623. We are of the opinion from a careful reading of the transcript that the trial justice did not abuse his discretion in concluding that whatever other negotiations may have been disclosed by the line of questioning complainant sought to pursue, the credibility of the witness would have remained unimpeached. This being an equity cause which is heard without a jury, in such circumstances a somewhat wider latitude of discretion is permitted.

We have examined the numerous cases cited to us by complainant in support of his position, but they are either not in point or not persuasive in the circumstances of this case. The reasons of appeal upon which complainant's first contention is based are without merit.

The complainant's remaining reasons of appeal are contained in his contention that if the findings of the trial justice are not disturbed he is nevertheless entitled to a conveyance of the undivided interest of respondent George and that the trial justice erred in denying the relief prayed for in the second prayer of complainant's bill. In support of his contention counsel for complainant calls to our attention the cases of *Najarian* v. *Boyajian*, 48 R. I. 213, and *Schneidau* v. *Manley*, 131 Conn. 285. Neither of them is of assistance to him in these proceedings.

Assuming arguendo that these cases are in point, and we think that they are not because they are distinguishable on their facts, they stand for the proposition that in the circumstances of those cases it was not an abuse of discretion for the trial justice to decree specific performance subject

to an adjustment in the purchase price for the wife's dower in *Najarian* v. *Boyajian,* and for the undisclosed tenancy of the wife in *Schneidau* v. *Manley.* In the instant case complainant has the burden to establish that the denial of his prayer for relief was an abuse of the trial justice's discretion.

The trial justice found that all the parties, the complainant and his witnesses as well as the respondents, contemplated the sale of the entire parcel and at no time was any effort made to purchase from respondent George his undivided interest for a consideration commensurate with such a sale. It is difficult to understand how he could have found otherwise since all of the testimony is in support of this finding. Specific performance is not a matter of right. It rests in the sound discretion of the court guided by the principles of equity. *Smart* v. *Boston Wire Stitcher Co.,* 50 R. I. 409. We cannot say in the light of the negotiations as testified to by all of the witnesses, that the decision of the trial justice in the instant cause was an abuse of his discretion.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Coleman B. Zimmerman, Raymond J. Surdut,* for complainant.

*Charles H. Anderson,* for respondents.