239 A.2d 719.

PASQUALE DIBIASIO *vs.* JOHN DIFAZIO *et al.*

MARCH 18, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.  This is a bill in equity[1] for specific performance of an agreement for the sale of land entered into between the plaintiff and the defendant John DiFazio, hereinafter referred to as John.  The cause was heard by a justice of the superior court sitting in equity, who thereafter entered judgment denying and dismissing the bill of complaint.  The plaintiff is in this court prosecuting his appeal from that judgment.

[1]This cause was instituted prior to the effective date of the new rules of civil procedure of the superior court, and, therefore, we will retain the use of the terminology applicable in equitable actions commenced prior to the adoption thereof.

The record discloses that Rose DiFazio, mother of John, was the owner of a tract of land comprising four house lots in the city of Cranston. Title to three of these lots she held in joint tenancy with her son John, while title to the fourth lot was in her alone. It is not disputed that on January 4, 1961, plaintiff conferred with John, who was working in a garage on Plainfield Pike. Neither is it disputed that an agreement for the purchase of the four lots was entered into by plaintiff and John and that plaintiff made a down payment of $300. There was introduced into evidence a receipt for this down payment which reads: "I received of Mr. Pasco M. DiBiasio a deposit of $300.00, For purchase of four lots of land on Garrison St., Cranston, R. I. (Lot #2839, 2840, 2841, 2842). For the total amount of $3865.00. This land will be sold with a clear Title Guarantee Policy. Total balance $3565.00."

The receipt bears the signature of John and the purported signature of the defendant mother. The testimony is in sharp conflict as to whether defendant mother in fact signed the receipt. John testified that he had signed both his name and his mother's name to the receipt at the garage in the presence of plaintiff and has some corroborating testimony to this effect. On the other hand, plaintiff testified that John left the garage ostensibly to get his mother's signature, and some 20 minutes later he returned with the purported signature of defendant mother and his own signature appearing on the receipt.

The trial justice found that John had signed defendant mother's name but was without authority to do so and that defendant mother had at no subsequent time ratified his action. The trial justice, conceding that the evidence on the issue was close, said: "But there is a burden of proof on the part of the plaintiff either to show that John had authority when he signed her name that day at the garage, or in the house, or at a later time that she ratified this sale;

and it doesn't seem to me that I can quite find that the plaintiff has done this." He then denied and dismissed the bill of complaint. We find no error here, for it is entirely consistent with the settled rule that one seeking specific performance of an agreement has the burden of establishing by clear and convincing evidence the propriety of the grant thereof by the court. *Reed* v. *Rathbun,* 91 R. I. 421, 164 A.2d 387.

Such findings by a trial justice sitting in equity will not be disturbed by this court on appeal unless shown to be clearly wrong. *City of Warwick* v. *Del Bonis Sand & Gravel Co.,* 99 R. I. 537, 209 A.2d 227. An examination of the record discloses that the trial justice made an exhaustive analysis of the testimony bearing on the issues here and based thereon reached conclusions of fact that are entirely reasonable. In so doing, in our opinion, he neither overlooked nor misconceived any evidence, and, therefore, we cannot say that he was clearly wrong.

Specific performance is not a matter of right but rests entirely upon the sound discretion of the chancellor. *Finkelstein* v. *Tateosian,* 77 R. I. 310, 75 A.2d 29; *Ball* v. *Milliken,* 31 R. I. 36, 76 Atl. 789. In the instant case, the trial justice having found lack of authority in John to enter into the agreement and lack of ratification thereof by defendant mother, to have granted specific performance would have been a clear abuse of sound judicial discretion. We find no error in the trial justice's denial of the bill for specific performance.

In this court plaintiff argued that the trial justice found that John had been authorized by his mother to sell her interest in the three lots held in joint tenancy and, therefore, he had authority to convey three of the four lots. On this basis he argued that the trial justice, having so found, erred in not decreeing partial specific performance with respect to the three lots. Were we to concede that the trial

justice had found that John possessed authority to sell the three lots, the question might well arise as to whether partial specific performance in the circumstances should be ordered.

There is considerable confusion among the authorities as to those situations in which it would be appropriate to decree partial specific performance. In *Morris* v. *Wilson,* 187 Md. 217, 225, 49 A.2d 458, 461, the court noted: "The principle as to partial specific performance, with abatement, invoked by plaintiff, has been recognized by Lord Nottingham 250 years ago (*Cleaton* v. *Gower,* Finch 164) and in many subsequent English and American cases. In the application of the principle, lines have not been sharply drawn, and it would not be easy to reconcile all the English or the American cases."

However, the view which seems to have behind it a substantial weight of authority is stated in *Merritz* v. *Circelli,* 361 Pa. 239, 64 A.2d 796. In that case the court pointed out that the high court of chancery in England as early as the seventeenth century was decreeing specific performance of agreements with an allowance of compensation to the plaintiff because of the defendant's inability fully to carry out his contract. The court went on to say: "The practice thus born has become so generally adopted that it is now a commonplace doctrine in equity jurisprudence, it being firmly established that, where it is not in the power of a vendor to make title to all that he has covenanted to convey, the vendee has the right to take what the vendor can give with an allowance out of the purchase money for the deficiency * * *. Only in cases where there is a defect in the vendor's title or a deficiency in the quantity of the land to be conveyed does the doctrine of specific performance with an abatement prevail; where there is merely a claim based upon a representation collateral to the contract the

only remedy available to the vendee is rescission or the recovery of damages at law."

It would appear that this court recognized and followed this doctrine in *Najarian* v. *Boyajian,* 48 R. I. 213, 136 Atl. 767, where this court said that where a vendee who had contracted with a married vendor for the purchase of a fee unencumbered and where the vendor's wife refused to release her dower right, "* * * the vendee may, if he so elects, take such title as vendor can convey with equitable compensation for the value of the contingent dower right release of which the vendor can not secure."

However, we are unable to agree with plaintiff's contention that in this case the trial justice found John vested with authority to convey his mother's undivided interest in the three lots. Nowhere in his decision does the trial justice specifically make such a finding. It is our opinion that the evidence warrants no more than a finding that John possessed authority to sell only his undivided interest in those three lots. Consequently, in these circumstances, plaintiff is not seeking relief under the doctrine granting partial specific performance of the agreement negotiated by the parties, that is, to convey full title to the four lots. Rather, he is seeking specific performance of an entirely different agreement that was not in contemplation of the parties at the time the agreement was negotiated, this being that John would convey to plaintiff an undivided interest in the three lots of which he and his mother were joint owners. It is fundamental that equity will not make a contract for the parties and then proceed to enforce it by a decree of specific performance.

Further, it should be noted that the record is barren of any indication that plaintiff sought partial specific performance in the court below. The bill contains no prayer for partial relief, nor does the record contain any evidence to the effect that the plaintiff would have accepted a convey-

ance of a part of the land that was the subject matter of the agreement. In all the circumstances it was not an abuse of discretion on the part of the trial justice to refuse to decree specific performance of an agreement to sell John's undivided interest in the three lots. See *Reed* v. *Rathbun, supra.*

The plaintiff in this court argued for the first time that if specific performance were not granted, an order should be entered requiring John to return the $300 paid as earnest money at the time of the execution of the receipt. We feel very strongly that prayers for relief of this type should be addressed to the trial court, and ordinarily we would feel justified in declining to pass upon the prayer for such relief. However, because of the peculiar circumstances of this case, we feel that the ends of justice would be best served if consideration were given to the prayer for a return of the deposit.

It is generally held that where a vendor fails or refuses to perform his contract or is unable to do so, the vendee may maintain an action to recover earnest money paid in the form of a deposit. In *Seekins* v. *King,* 66 R. I. 105, 17 A.2d 869, a vendee sought return of money paid on account of a purchase of certain land, and the court denied the prayer for relief on the ground that the vendee had repudiated that contract without legal excuse. By way of dicta in that case, this court said that as a general rule a vendee who repudiates his contract without legal excuse is not entitled to recover from the vendor money paid in part performance of an executory contract, even though that contract contained no forfeiture clause or provision for the retention by the vendor of the money so paid as liquidated damages. For a discussion of this rule, see *Paolilli* v. *Piscitelli,* 45 R. I. 354, 121 Atl. 531.

In *Seekins* v. *King, supra,* however, we recognized that there are certain exceptions to this general rule, saying, 66

R. I. at 110, 17 A.2d 871: "One of these exceptions comes under the doctrine of unjust enrichment, which, being equitable in character, permits recovery in certain instances where a person has received from another a benefit the retention of which would be unjust under some legal principle or situation which equity has established or recognized. Another of these exceptions applies where there has been a rescission of the contract, either express or implied." It follows then that where the vendor defaults under the agreement to convey, the vendee should be entitled to recover payments made pursuant to that agreement in order to prevent an unjust enrichment of the vendor.

John, it is clear, came into possession of the $300 as a result of his own action which, if it was not negligence, was at least serious error in judgment. We know of no rule of law or equitable doctrine pursuant to which defendant should be permitted to unjustly enrich himself by retaining that amount. This is a situation, in our opinion, which shocks the conscience of the court and calls for correction.

We are aware of the general rule that money paid on account of a purchase price may be recovered in an action at law in an appropriate case. See *Hillman* v. *Busselle*, 66 Ariz. 139, 185 P.2d 311; *Coolidge & Sickler, Inc.* v. *Regn*, 7 N. J. 93, 80 A.2d 554. It is our opinion, however, that no useful purpose would be served by relegating the plaintiff here to an action at law. Equity properly assumed jurisdiction of this case on the prayer for specific performance, and, retaining such jurisdiction, it may proceed to give full relief. In the circumstances, it is our opinion that the cause should be remanded to the superior court for entry of judgment in favor of the plaintiff in the amount of $300.

The plaintiff's appeal is sustained in part, the judgment appealed from, to the extent that it denies specific performance, is affirmed, and the cause is remanded to the superior

court for entry of judgment for the plaintiff in the amount of $300 with interest from the date of the agreement.

*Ralph Rotondo,* for plaintiff.

*DiMascolo & DiPetrillo, Anthony DiPetrillo,* for defendants.