**Wayne M. CHAPMAN**

v.

**Domenic VENDRESCA and Pasquale DeLuca, d/b/a Brookside Heights Co., et al.**

**No. 79–16–Appeal.**

Supreme Court of Rhode Island.

March 13, 1981.

Edwards & Angell, Stephen A. Fanning, Jr. and John D. Deacon, Jr., Providence, for plaintiff.

Adler, Pollock & Sheehan Incorporated, Peter Lawson Kennedy, Providence, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from rulings by the trial justice in the Superior Court denying the defendants' motion for a directed verdict and granting the defendants' motion for a new trial. Although the case is presented in a somewhat complex procedural posture, the essential facts are not subject to dispute.

On February 10, 1973, plaintiff, Wayne M. Chapman, entered into a contract with Dominic Vendresca and Pasquale DeLuca (defendants) for the purchase of a portion of a tract of land situated in East Greenwich, Rhode Island. The terms of the contract were as follows:

"Feb. 10, 1973

"Received this date from Mr. Wayne Chapman deposit $500 for lot # 5 (Burr Court).

"Selling price of lot $11,500 except as follows:

"a) If by May 1, 1973 said lot not available for start of house building, deposit of $500 to be return [sic] in full upon demand.

"b) If Mr. Chapman were to select John Jody Enterprises to do house construction on said lot, Selling Price of Lot 5 will be reduced to $10,500.00.
[Signed]
Pasquale M. DeLuca"

The numbered lot referred to in the contract was not in existence at the time the parties entered into the agreement because no authority had been obtained from the town of East Greenwich for a subdivision. Subsequently defendants submitted a proposed plat and subdevelopment plan to the appropriate municipal officials. The town authorities approved the plat, subject to a condition requiring installation of town water. The defendants determined that the cost of installing town water would make the project uneconomical. Therefore, the subdivision was neither approved nor implemented.

On October 2, 1973, defendants communicated with plaintiff by letter stating that they had decided not to develop the tract and enclosed a check payable to plaintiff in the amount of $500. This check, representing the return of plaintiff's deposit, was never cashed by plaintiff and was eventually returned to defendants. At no time did defendants effectuate a subdivision of the tract of land which included the parcel that was the subject of this contract.

However, in September 1976, defendants conveyed to Mr. and Mrs. Ronald A. Johnson an undivided tract of fifteen acres which included the land that had been the subject of the contract with plaintiff. Thereafter, on November 30, 1976, plaintiff filed a complaint against defendants and the Johnsons seeking damages and specific performance.[1]

In response to a demand for jury trial, the specific performance counts were severed and the issues relating to breach of contract and assessment of damages were tried to a jury. At the conclusion of the evidence, defendants moved for a directed verdict. Pursuant to Super.R.Civ.P. 50(b), the court reserved decision on the motion

---

1. The defendants filed a counterclaim against plaintiff seeking discharge of the notice of *lis pendens*. The Johnsons filed a counterclaim against plaintiff for abuse of process and slander of title and a cross-claim against defendants for violation of the covenants in the warranty deed. At the close of plaintiff's evidence, a motion for directed verdict on the issue of damages was granted in favor of the Johnsons. Thereafter, a stipulation was entered dismissing all claims by and against the Johnsons. This action eliminated any demand for specific performance and left the sole remaining issue in the case one of damages between plaintiff and defendants.

and after rendition of the jury's verdict, denied said motion. The jury returned a verdict for plaintiff in the amount of $7,500. The defendants moved for a new trial, which was granted by the court unless both parties agreed within twenty days to a verdict in the amount of $3,950. The parties did not agree and this appeal ensued.

The defendants first argue that their motion for direction of verdict should have been granted since there was no evidence of a tender of the purchase price by plaintiff. It is apparently conceded, however, that plaintiff was at all times entitled to the return of his deposit. Therefore, defendants were in error in seeking that a verdict be directed entirely in their favor. What they should have sought, in order to obtain the only relief to which they were entitled, was a peremptory instruction to the jury to limit recovery to the amount of the deposit. Had such a motion been made, we believe that the trial justice would, as a matter of law in this case, have been required to grant it.

█ It is well settled in this state that clear and unambiguous language set out in a contract is controlling in regard to the intent of the parties to such contract and governs the legal consequences of its provisions. *Fireman's Fund Insurance Co. v. E. W. Burman, Inc.*, R.I., 391 A.2d 99 (1978); *Theroux v. Bay Associates, Inc.*, 114 R.I. 746, 339 A.2d 266 (1975); *Flanagan v. Kelly's System of New England, Inc.*, 109 R.I. 388, 286 A.2d 249 (1972). In *Theroux* this court considered a clause similar in content to the provision in the instant case. The parties in that case had agreed to a return of the purchaser's deposit if the municipal authority refused to approve certain necessary zoning changes. In analyzing the legal effect of this clause, we found "inescapable the conclusion * * * that the parties' intent as disclosed by that language was that if the petition for an amendment to the zoning ordinance were denied by the town

council, the agreement would be terminated." *Theroux v. Bay Associates*, 114 R.I. at 749, 339 A.2d at 268.

█ In the case at bar the parties had agreed that if by May 1, 1973, the lot in question was not available for the start of house building, the deposit of $500 should be returned in full upon demand. There is nothing in this contract which obligated the seller to create a subdivision. We are convinced that the legal effect of the agreement in the instant case was the creation in either party of the power, if the lot was not prepared for building, to "back out" of the deal after May 1, 1973.[2] The seller had in effect the option of implementing a subdivision plan by May 1—and perhaps within a reasonable time thereafter at the option of the buyer in delaying his demand—or returning the deposit. There is no ambiguity in this contract which would create an issue of fact for the jurors. Similarly, it is uncontroverted that defendants did not then or thereafter subdivide this property so as to bring Lot 5 into existence. Therefore, this designated parcel or lot of land could not then or thereafter have been conveyed to anyone. It is undisputed that defendants orally expressed a desire to "back out" in September 1973 and that they actually returned a check for $500, representing the deposit, in October of that year.

There is no allegation, nor was there evidence, of fraud, bad faith, illegality, misconduct, or any other factor that might alter the legal relationship of these parties. In light of our interpretation of this contract and our review of the facts, we are convinced that plaintiff is entitled to only one remedy: the return of his deposit according to the terms of the agreement. There is no issue in respect to this contract which merits submission to a jury.

The relative simplicity of the foregoing discussion belies the procedural tangle that

---

**2.** Although the defendants did not return the *plaintiff's deposit* until October 2, 1973, we do not believe that this delay had any effect on the defendants' right to terminate the agreement. *See Coopersmith v. Isherwood*, 219 Md. 455, 465, 150 A.2d 243, 247–48 (1959) (when contract does not specify time within which notice of termination must be given, terminating party has reasonable time).

this case presents. Ordinarily in considering such an appeal, we would either affirm or reverse the decision of the trial justice with direction that the case be remitted to the Superior Court for proceedings in accordance with our opinion. We are convinced, however, that such a course would serve neither the specific parties to this action nor the judicial system in general. Given our interpretation of the legal effect of the agreement in this case, we believe that reinstating the plaintiff's $7,500 verdict would undoubtedly work a substantial injustice between these parties. Similarly, affirming the decision of the trial justice to grant a new trial would needlessly consume valuable judicial time. Such an outcome would be indefensible in a case that we have concluded merits one and only one resolution. Because we believe that no useful purpose would be served by sending this matter back to the Superior Court for further litigation, we conclude that the case should be remanded for entry of judgment for the plaintiff in accordance with the contract terms. *See DiBiasio v. DiFazio*, 103 R.I. 565, 572, 239 A.2d 719, 723 (1968).

In light of our resolution of this case, we need not address the remaining issues raised by the defendants' appeal. The defendants' appeal is sustained in part. The judgment appealed from, to the extent that it implicitly denies a peremptory instruction and grants a new trial, is vacated; and the cause is remanded to the Superior Court for entry of judgment for the plaintiff in the amount of $500 with interest from May 1, 1973.

SHEA, J., did not participate.