Azarig KOOLOIAN

v.

**SUBURBAN LAND CO. et al.**

v.

**Azarig Kooloian, Jr., alias.**

**No. 2003–4–Appeal.**

Supreme Court of Rhode Island.

May 18, 2005.

Joseph A. Keough, Jr., Pawtucket, for Plaintiff.

Gerard M. DeCelles, Smithfield, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on March 9, 2005, pursuant to an

order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time. We affirm.

The defendants, Suburban Land Co. (Suburban or seller), Green Acres Realty, Inc. (Green Acres), and Raymond Reedy (Reedy or, collectively, defendants), appeal from a judgment entered in favor of the plaintiff, Azarig Kooloian (Kooloian or plaintiff).

### Facts and Travel

After CVS/pharmacy (CVS) expressed an interest in developing a pharmacy on land at 921 Manton Avenue in Providence, plaintiff decided to buy the property to construct a building to lease to CVS. On May 18, 1994, plaintiff executed a purchase and sales agreement (contract), in which he agreed to buy and Reedy, on behalf of Suburban, agreed to sell property located at 921–923 Manton Avenue (property) for $80,000.[1]

In the contract, Suburban, as the seller, "covenant[ed] and warrant[ed] that it [was] the fee title owner of the [p]roperty and [had] the authority and capacity to enter into this [a]greement and consummate the transaction contemplated herein." The contract provided that:

"[t]he [p]roperty is to be conveyed by good and sufficient warranty deed from the [s]eller, conveying good, insurable and marketable title to the [p]roperty free from all encumbrances except as may be acceptable to [b]uyer[.] * * * If [s]eller is unable to remove such defects, [b]uyer shall have the option to: (a)

accept such title as [s]eller is able to convey without abatement or reduction of the [p]urchase price[;] or (b) cancel this [a]greement and receive a return of all [d]eposits."

Also, the contract reflected the understanding that the "[o]ffer [was] contingent upon owner obtaining clear title to property." Unfortunately, the seller could not deliver a clear title to the property. On July 19, 1994, plaintiff recorded the contract in the land evidence records of the City of Providence.

The evidence disclosed that, on December 1, 1993, Suburban had executed a quitclaim deed for the property to Murphy Financial Group, Inc. (Murphy Financial). Murphy Financial gave Suburban a mortgage in the amount of $65,000. The mortgage was recorded on May 9, 1994, and the deed was recorded on February 21, 1995. When the contract was executed, plaintiff was unaware of this prior transfer to Murphy Financial. Craig Raposa (Raposa), the sole shareholder of Murphy Financial, obtained financing for the property from three lenders, and all three lenders held a security interest in the property. Also, after plaintiff entered into the contract for the property, Suburban executed yet another deed for the property to Green Acres. At the time, Reedy served as the principal officer and shareholder of Suburban and Green Acres.

The plaintiff learned of the prior conveyance and encumbrances after the contract was executed. Nevertheless, plaintiff remained interested in the property and engaged in discussions with Reedy's attorney and Raposa's lenders, which culminated in multiple lawsuits in Providence County Superior Court seeking injunctions and fore-

---

1. The plaintiff paid a $1,000 deposit to Suburban when the contract was signed, and this deposit later would be returned to plaintiff.

closure sales. The plaintiff was not made a party to most of these actions. The Superior Court ultimately ordered a foreclosure sale to clear title to the property.

On April 28, 1995, plaintiff filed a notice of *lis pendens* on the property and filed suit against Suburban and Green Acres. On May 27, 1997, plaintiff purchased the property at the foreclosure sale for $105,000 and paid approximately $16,000 in unpaid real estate taxes. On April 28, 1998, plaintiff moved to amend his complaint, adding Reedy[2] as a defendant and alleging fraud and breach of contract. After a jury-waived trial, the trial justice entered judgment for plaintiff on all counts,[3] against all named defendants jointly and severally. The court awarded damages of $41,000, plus statutory interest, costs, and reasonable attorney's fees. The defendants appealed.[4]

## Issues Presented

On appeal, defendants argue that the evidence did not support a finding that defendants' conduct constituted fraud, and without proof of fraud, plaintiff's sole remedy under the contract was a refund of the deposit. The defendants also contend that the damages awarded by the trial justice were unjust because plaintiff voluntarily purchased the property at the foreclosure sale and paid $25,000 more than the agreed-upon sales price. Additionally, defendants assert that the trial justice erred in awarding reimbursement of $16,000 in back real estate taxes paid by plaintiff to acquire the property at the foreclosure sale because plaintiff was obligated to pay these taxes as the owner of the property.

## Standard of Review

"In reviewing a trial justice's decision in a nonjury civil case, we will not disturb his or her factual findings unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Bogosian v. Bederman*, 823 A.2d 1117, 1120 (R.I.2003) (quoting *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1144 (R.I.2002)). "[T]his Court will not disturb determinations of credibility in a [nonjury] trial unless the findings are clearly wrong or the [trial justice] misconceived or overlooked material evidence." *Id.* (quoting *Andreozzi v. Andreozzi*, 813 A.2d 78, 82 (R.I.2003)). "The task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." *Id.* (quoting *Walton v. Baird*, 433 A.2d 963, 964 (R.I. 1981)).

## Discussion

The trial justice's decision to award damages in excess of the deposit, with

---

**2.** The plaintiff sued Reedy in both his individual capacity and as the president of both Suburban and Green Acres.

**3.** When delivering her bench decision, the trial justice declared that "judgment shall enter for plaintiff as to all [c]ounts of his complaint * * * for breach of contract and fraud." The trial justice specifically referred to the bench decision in the judgment entered on September 4, 2002. However, in an order, also dated September 4, 2002, the trial justice ordered that "judgment is hereby granted for the plaintiff as to [c]ounts I, III, IV and V of plaintiff's [a]mended [c]omplaint

and denied as to [count] II of plaintiff's [a]mended [c]omplaint."

**4.** On January 26, 2004, after the appeal was filed, this Court remanded the case to the Superior Court for an assessment of attorney's fees. The papers were returned to this Court. On May 24, 2004, this Court again ordered the papers of this case remanded to the Superior Court to include consideration of plaintiff's motion for issuance of an execution or alternative relief. On July 23, 2004, the Superior Court executed judgment against defendants in the total amount of $108,635.64.

interest and expenses, rested on "[a] finding of bad faith or fraud in defendants' inability to convey the [property]."

## Breach of Contract and Proof of Fraud

■ At trial, Azarig Kooloian, Jr. (Ozzie), an agent for Kooloian, his father, testified that no one had informed plaintiff about any issues with the property's title, nor that Reedy had already conveyed the property to Murphy Financial. According to Ozzie, he or plaintiff first learned about the title defects after the contract had been signed by the parties. Ozzie recalled that, by the time plaintiff purchased the property at the foreclosure sale, CVS had decided to develop a pharmacy at a different location and no longer was interested in the property.

Reedy's deposition and affidavit were admitted into evidence as full exhibits. In the affidavit, dated July 27, 1995, Reedy acknowledged that he had deeded the property to Raposa, but because Raposa had not recorded the deed, Reedy negotiated and signed a sales agreement with plaintiff. In his deposition, Reedy stated that he "meant to" disclose the title problems to plaintiff at the time they signed the contract but did not remember doing so.

At trial, Reedy's then-attorney, Edward A. DiPippo (DiPippo), testified that Raposa was making payments under the defaulted note during the foreclosure proceedings, but DiPippo did not know whether Reedy disclosed to plaintiff Raposa's payments on the note.

■ The testimony and evidence adduced at trial supported the trial justice's finding that defendants not only breached the contract but also acted in bad faith and committed fraud. It is well settled that "[t]o establish a prima facie damages claim in a fraud case, the plaintiff must prove that the defendant 'made a false representation intending thereby to induce plaintiff to rely thereon' and that the plaintiff justifiably relied thereon to his or her damage." *Travers v. Spidell*, 682 A.2d 471, 472–73 (R.I.1996) (quoting *Cliftex Clothing Co. v. DiSanto*, 88 R.I. 338, 344, 148 A.2d 273, 275 (1959)). "[W]hen a person claims to own certain property, such representations may be justifiably relied upon by a plaintiff who is transacting business with that person without first investigating or verifying the accuracy of such a claim." *Id.* at 474.

In particular, the trial justice found that defendants breached the contract by representing that Suburban was the owner in fee of the property with authority to enter into the contract. The trial justice observed that defendants failed to inform plaintiff that Suburban had already conveyed the property before plaintiff signed the contract. Also, the trial justice characterized Reedy's decision to convey the property to Green Acres as made "with the further intent to further defeat plaintiff's interest" in the property. The trial justice noted that Reedy continued to receive partial payments of the property's purchase price from Raposa during the foreclosure proceedings. She found that "Reedy was intentionally deceptive in the conversation with plaintiff during the course of the proceedings." The trial justice explained that plaintiff relied upon defendants' misrepresentations in deciding to continue negotiating with CVS and to persist in his efforts to acquire the property. Ultimately, plaintiff purchased the property at the foreclosure sale and incurred costs beyond the purchase price negotiated in the contract.

Our review of the record discloses evidence supporting the trial justice's finding that defendants breached the contract and committed fraud. We are satisfied that the trial justice conducted the appropriate analysis, neither overlooked nor misconceived any material evidence, and did not

otherwise fail to do substantial justice between the parties. With respect to the finding of fraudulent conduct by defendants, we can hardly envision a clearer case of fraud—contracting to sell property that a party had already sold to someone else.

## Damages

■ This Court consistently has held that in the absence of "fraud, bad faith, illegality, misconduct, or any other factor that might alter the legal relationship of these parties," damages for the breach of a contract to purchase real estate are limited in accordance with the terms of the contract. *Chapman v. Vendresca*, 426 A.2d 262, 264 (R.I.1981) (Buyer is entitled to "the return of his deposit according to the terms of the agreement."); *see also King v. Knibb*, 447 A.2d 1143, 1146–47 (R.I.1982) (denying claim for contract damages in addition to the return of deposit where there was a finding of seller's good faith); *DiBiasio v. DiFazio*, 103 R.I. 565, 571, 239 A.2d 719, 722 (1968) ("[W]here a vendor fails or refuses to perform his contract or is unable to do so, the vendee may maintain an action to recover earnest money paid in the form of a deposit.").

In this case, defendants acted in bad faith and committed fraud, thus entitling plaintiff to damages beyond a refund of the deposit. The trial justice awarded damages for loss of bargain—"the difference between the contract price and the market value of the property as of date of the breach, plus interest and reasonable expenses." 12 *Thompson on Real Property* § 99.14(b)(2) at 289 (Thomas ed.1994). The trial court awarded plaintiff $41,000 to account for both the $25,000 difference between the contract price and purchase price at the foreclosure sale and $16,000 paid by plaintiff in back real estate taxes as a condition to acquiring the property at the foreclosure sale. We recognize that the price paid for properties sold at fore-closure sales often falls below fair market value. Significantly, however, defendants did not present any evidence on this point, and the trial justice was satisfied that the price paid at the foreclosure sale was an appropriate measure to calculate plaintiff's loss of bargain damages.

Contrary to defendants' argument, whether plaintiff *voluntarily* acquired the property is irrelevant to the calculation of damages. Moreover, the award of $16,000 in back real estate taxes paid by plaintiff was imposed appropriately as an expense; if plaintiff had received the bargain promised in the contract, he would not have incurred this expense in acquiring the property.

■ The defendants urge this Court to vacate the judgment against those defendants who were not parties to the contract. We refuse to consider this argument because it was not raised with sufficient particularity during this litigation; nor does this issue implicate basic constitutional rights, *Francis v. American Bankers Life Assurance Company of Florida*, 861 A.2d 1040, 1044 (R.I.2004); it does not involve public policy; and the issue is not "exhibited on the face of the record." *Union Station Associates v. Rossi*, 862 A.2d 185, 192 (R.I.2004) (quoting *Phelps v. Bay Street Realty Corp.*, 425 A.2d 1236, 1239 (R.I.1981)) (holding although city did not raise an issue precisely in Superior Court, important public policy interests raised by that issue warranted Supreme Court's consideration on appeal).

For the foregoing reasons, we affirm the judgment of the Superior Court. The papers of the case are remanded to the Superior Court.

Justice FLAHERTY did not participate.