Michael E. RILEY et al.

v.

Fernand J. ST. GERMAIN et al.

No. 98-34-Appeal.

Supreme Court of Rhode Island.

Jan. 14, 1999.

Lisa Kornher Cooper; James Vincent Paolino, Warwick, for plaintiffs.

Charles S. Kirwan, Pawtucket, for defendants.

Present LEDERBERG, BOURCIER, and FLANDERS, JJ.

## OPINION

PER CURIAM.

This case involves the propriety of a damage award for the breach of a purchase and sale agreement for a residential property. The plaintiffs, Michael E. Riley and Beryl Riley, sued to recover their $15,500 deposit after they decided not to proceed with the purchase of the defendants' Woonsocket home. The Superior Court, however, ruled not only that the plaintiffs must forfeit their deposit, but also that they were liable to the defendants for damages arising out of their breach of the contract to purchase the defendants' home. The plaintiffs now appeal from a total judgment that entered in favor of the defendants on their breach-of-contract counterclaim for $245,247.63 ($122,013.62 in damages plus interest). We ordered the parties to show cause why we should not resolve this appeal summarily. After hearing the oral arguments and reviewing their memoranda, a

panel of this Court concludes that no cause has been shown and that the appeal can be decided at this time.

The plaintiffs' complaint alleged that defendants, Fernand J. St. Germain and Rachel M. St. Germain, had breached the terms of a purchase and sale agreement signed by the parties on February 16, 1989, by "not living up to representations and promises made *** including but not limited to, closing dates, furnishings included in said sale, second mortgage availability, and current sale of adjacent lot, and a 72–hour response time." The plaintiffs demanded the return of their $15,500 deposit. The defendants' answer and counterclaim alleged that they had been ready, willing, and able to perform, but that plaintiffs refused to complete the purchase of their house. They demanded damages arising from plaintiffs' alleged breach or, in the alternative, specific performance.

The case proceeded to court-annexed arbitration and in December 1990, judgment entered for defendants on both plaintiffs' claim and defendants' counterclaim. The arbitrators awarded $22,000 plus interest and costs to defendants. The plaintiffs, however, rejected that award, and the case headed to Superior Court. Ultimately, defendants filed a motion for partial summary judgment as to liability. After a hearing, a motion justice entered an order granting the motion on defendants' counterclaim for breach of contract, and dismissing plaintiffs' complaint and defendants' alternative counterclaim for specific performance.

Two years later, another Superior Court justice presided at an evidentiary hearing on damages. At this hearing, defendants established that plaintiffs had agreed to purchase the house for $320,000 in February 1989. Several weeks after signing the purchase and sale agreement, plaintiffs decided not to proceed with the purchase. The defendants' real-estate agent, Roger L. Plante (Plante), outlined his efforts to sell the house after plaintiffs backed away from the agreed-upon purchase. He noted that the real-estate market in Rhode Island had declined drastically in late 1989 and the early 1990s. Al-

though there were several other potential purchasers, Plante stated, defendants were unable to close with another buyer until January 1992, when they finally sold the house for $225,000. The defendants claimed that the $95,000 difference between this sale price and the $320,000 contract price was a loss proximately caused by plaintiffs' breach of contract.

Mr. St. Germain also testified about his carrying costs during the interim between plaintiffs' repudiation of the purchase and sale agreement in 1989, and the property's eventual sale in 1992. He stated that those costs included utilities, maintenance, insurance, taxes, pest control, and security. In addition, Mr. St. Germain testified that he and his wife had to install new kitchen cabinets and countertops in an effort to make the house more marketable. The defendants asserted that all of these costs (which totaled $47,876.17) were reasonable and necessary out-of-pocket expenses.

Final judgment entered for defendants on September 23, 1997 in the amount of $122,013.62,[1] plus interest for a total award of $245,247.63. On appeal, plaintiffs argue that both the liability and damages portions of the judgment were improper. They suggest that defendants misrepresented to them that they could move into the house almost immediately. This was important to them, they claim, because they wanted to enroll their son in a new school system immediately. Although there was no written agreement regarding early occupancy, plaintiffs contend that they relied to their detriment on defendants' oral statements that they would be able to move in before March 1989. They assert that defendants' early move-in assurances became part of the agreement and induced them to sign the purchase and sale agreement. Moreover, they maintain that these representations were tantamount to fraud. The plaintiffs assert that because defendants breached their agreement concerning immediate occupancy, the court should have excused them from performing their part of the bargain and allowed them to reclaim their original deposit.

---

1. This sum represents the $95,000 loss on the sale of defendants' house, plus the $47,876.17 in carrying costs, less the $20,862.55 in escrow (plaintiffs' original deposit plus interest).

Additionally, plaintiffs argue that even if this Court upholds the liability judgment, the forfeiture of their deposit should have sufficed for the damages award. They also insist that the Superior Court erred in finding that defendants had mitigated their damages, and in holding plaintiffs liable for a loss in value caused by a declining real-estate market. They aver that during the years 1989 through 1992, "Rhode Island experienced the largest depreciation of real estate values in its history." Accordingly, they argue, the trial justice should have taken judicial notice of this decline, instead of holding them responsible for defendants' losses. Moreover, plaintiffs claim that defendants unreasonably held out for higher bids in this declining market. By not accepting a lower bid sooner, plaintiffs contend, defendants contributed to the large difference between plaintiffs' original offer and their home's much-reduced sales price three years later.

The defendants respond that the statute of frauds and the parol evidence rule barred all evidence of alleged prior oral representations. They note that plaintiffs attempted, unsuccessfully, to amend their Superior Court complaint to include a count for fraud.[2] Without such a count, defendants contend, plaintiffs could not introduce extrinsic evidence of any alleged oral agreements or representations. Moreover, because there was no fraud count raised or adjudicated below, defendants urge that plaintiffs cannot now rely upon an argument involving alleged fraud before this Court. On the contrary, say defendants, plaintiffs are bound by the written purchase and sale agreement which they indisputably breached.

As to damages, defendants point out that the purchase and sale agreement expressly provided for damages in the event of the buyers' default, and not merely for the sellers' retention of the buyers' deposit. The defendants argue that they fully presented documentary proof of their damages, including the loss they sustained on the home's eventual resale, and their carrying costs. They also posit that they attempted to mitigate their losses by aggressively marketing the house and pursuing other possible buyers.

 We agree with the trial justice that plaintiffs could not rely upon defendants' alleged unwritten assurances concerning an early move-in date to excuse their non-performance. The statute of frauds and the parol evidence rule barred them from doing so. The statute of frauds—codified at G.L. 1956 § 9-1-4(6)—requires all agreements involving the sale of land to be in writing to be enforceable. *See, e.g., Smith v. Boyd,* 553 A.2d 131 (R.I.1989). Similarly, the parol evidence rule bars admission into evidence of prior and/or contemporaneous oral modifications to an integrated written agreement. *See Bourg v. Bristol Boat Co.,* 705 A.2d 969, 971 (R.I.1998). Based on the undisputed facts and the terms of the parties' purchase and sale agreement, the motion justice correctly ruled that plaintiffs breached that agreement and properly imposed liability for that breach on them as a matter of law.

 As to damages, it is well settled that a court may award damages for breach of contract to place the injured party in as good a position as if the parties fully performed the contract. *See Wells v. Uvex Winter Optical, Inc.,* 635 A.2d 1188, 1193 (R.I.1994) (citing *Rhode Island Turnpike and Bridge Authority v. Bethlehem Steel Corp.,* 119 R.I. 141, 166, 379 A.2d 344, 357 (1977)). In addition, the standard of review of a trial justice's findings on damages is quite deferential. *See Kottis v. Cerilli,* 612 A.2d 661, 668 (R.I.1992).

 Here, the trial justice properly considered all the uncontradicted evidence provided by defendants. The defendants introduced a three-ring binder containing invoices, bills, checks, and other documentation for all the expenses they claimed as legitimate carrying costs for the property. Also, it was undisputed that the house eventually sold for $95,000 less than what plaintiffs had agreed to pay for it. With respect to the efforts that went into adver-

---

**2.** Although the record is not entirely clear on this point, defendants assert that at the summary-judgment hearing on liability, plaintiffs passed or withdrew their motion to amend their complaint to add a claim for fraud. In any event, the complaint never included a fraud count.

tising and marketing this home over the three-year period of time, Plante testified that it was placed back on the market after plaintiffs decided not to complete the sale. During this period, defendants received various offers for the property that were higher than the eventual sale price. One of those offers actually resulted in defendants entering into a separate purchase and sale agreement with a different buyer for $287,000. However, the agreement was subject to the completed sale of the prospective buyer's home, a condition that did not occur. As a result, the agreement, which defendants were otherwise prepared to perform, fell through. Moreover, on approximately five other occasions, potential purchasers made firm offers which likewise failed to ripen into enforceable sales agreements for various valid reasons, including inter alia zoning problems and the buyers' reluctance to put down a cash deposit. Finally, defendants repeatedly lowered the price on their home during this period in an effort to attract would-be buyers.

In sum, the evidence at trial established that defendants exercised reasonable efforts to mitigate their damages, and that they would have been better off by $122,013.62 if plaintiffs had purchased the property as they had agreed to do in 1989. Thus, we have no grounds to revisit the trial justice's conclusion that plaintiffs failed to carry their burden at trial to show otherwise. *See Bibby's Refrigeration, Heating & Air Conditioning, Inc. v. Salisbury*, 603 A.2d 726, 729 (R.I. 1992) (holding that the burden of proof rests on the party claiming that another litigant has failed to mitigate damages).

Although some purchase and sale agreements provide that the seller's remedy for a buyer's default is retention of the buyer's deposit in lieu of any further damages, this contract contained no such limiting language. To be sure, the plaintiffs are now bearing the burden of losses caused in part by a dramatically declining real-estate market. But as between the defaulting buyers and the ready-and-willing sellers, it would be unfair to require the defendants to absorb these losses when, as the trial justice found, they acted reasonably and responsibly to mitigate their

damages after the plaintiffs breached the contract. Thus, given the deferential standard of review that we are bound to use in assaying the findings of a trial justice sitting without a jury, we must deny and dismiss the plaintiffs' appeal as to damages.

For these reasons, we affirm the judgment, deny the appeal, and remand the papers of the case to the Superior Court.

Chief Justice WEISBERGER and Justice GOLDBERG did not participate.