DECISION
This matter is before the Court on the defendant's renewed motion for judgment as a matter of law pursuant to Rule 50, or, in the alternative, for a new trial pursuant to Rule 59, following entry of judgment on November 15, 2002 in accordance with a jury verdict for the plaintiff for $8389.00, together with interest and costs.
The plaintiff's claim is for damages for the anticipatory breach of stock option agreements between the defendant and the plaintiff issued as incidents of the plaintiff's employment by the defendant and its corporate predecessors. The first option agreement (Plaintiff's Exhibit 5) was issued by Bugaboo Creek Steak House, Inc. on April 6, 1994 and contains the following language, which appears in all the agreements, which are the basis of the plaintiff's claim:
 "2. Terms and Conditions. * * *
 (c) Exercise of Option. This option shall be exercised by submitting a written notice to the Committee appointed pursuant to Section 3 of the Plan (the `Committee') signed by the Optionee and specifying the number of common shares as to which the option is being exercised. Such notice shall be accompanied by the payment of the full option price for such shares . . . .
 (d) Termination of Option Upon Death, Disability, Retirement or Termination of Employment. Unless the Committee in its discretion determines otherwise, if the Optionee's employment with the Company and its subsidiaries terminates, any portion of this option which is not exercisable on the date of such termination of employment by reason of Section 2(b) hereof shall immediately terminate, and any remaining portion of this option shall terminate if not exercised before the expiration of the following periods, or at such earlier time as may be applicable under Paragraph 2(a) above: (i) three months following such termination of employment . . . notwithstanding the foregoing, if the Optionee is terminated for cause, any remaining portion of this option shall immediately terminate."
The plaintiff's employment with the defendant terminated on or about March 3, 1999. At that time the plaintiff was entitled to exercise his options to purchase several thousand shares of the defendant corporation at $21.33 per share. The plaintiff did not, however, exercise the options in the manner prescribed in Paragraph 2(c) of the Option Agreements before the expiration of three months following his termination of employment in accordance with the requirement of Paragraph 2(d)(i) of the Option Agreements.
The defendant contends that because the plaintiff failed to exercise them in a timely manner it did not breach the Option Agreements because they had terminated by their own terms. From the defendant's point of view once the Option Agreements had terminated by their own terms there was nothing left for them to do. It points out that the Option Agreements were binding promises to keep an offer to sell stock at an agreed price open for a definite term, which would not ripen into a contract of purchase and sale, until the offer being held open was accepted by the plaintiff in the manner specified by the Option Agreements. Since the plaintiff did not accept those offers to sell while they were open, he sustained no loss attributable to the defendant's conduct.
The plaintiff, on the other hand, argues that he was excused from attempting to exercise the options, because the defendant's conduct at the time of his termination of employment constituted an anticipatory breach of the option agreements, thereby entitling him to bring this claim for damages for any loss he could prove to have been a consequence of the defendant's wrongful termination of the continued existence of the Option Agreements.
The plaintiff offered evidence that the defendant purported to terminate his employment for cause. According to the last sentence of Paragraph 2(c), if the plaintiff had been properly terminated for cause, his options were thereupon terminated immediately. The options are silent both as to the meaning of "cause," as well as by whom "cause" is to be determined.
In his amended complaint, filed on April 13, 2000, the plaintiff alleged in paragraph 15, "Defendant, acting through its agents, servants or employees, did advise D'Oliveira that his termination was `for cause'." To that allegation the defendant answered, "Admitted." The defendant has never offered to amend that answer nor to attempt to offer evidence to disavow or explain that admission.
In addition, according to Plaintiff's Exhibit 18, the defendant attempted to resist the plaintiff's claim for unemployment benefits by alleging that he was discharged for poor work performance and because he had expressed a desire to open up his own restaurant. It is clear that the defendant regarded its firing of the plaintiff not only to have been "for cause," but that the cause rose to the level of misconduct which would disqualify him from benefits for his unemployment.
The plaintiff's employment was for an indefinite term. As a consequence, it is well-established that he was an employee at will. The defendant was free to fire him with or without cause, just as the plaintiff was free to quit as, when and if he chose. Accordingly, it was not necessary for the defendant to claim it was justified in firing the plaintiff, unless it wished to deny the plaintiff any post-employment benefits he might otherwise have enjoyed.
In order to prove the defendant guilty of an anticipatory breach of the Option Agreements the plaintiff was required to prove that the defendant intended to repudiate its contractual obligation unqualifiedly, unconditionally and unequivocally. There is no evidence that at the time of the plaintiff's firing the defendant made any express reference to the Option Agreements. As a result there is no evidence of any express repudiation of the option by the defendant in so many words.
The plaintiff, however, attempted to prove the defendant's state of mind with respect to its performance of the Option Agreements by circumstantial evidence. The plaintiff testified without contradiction that he had been a diligent hard-working employee and that for the six years of his employment he had received positive performance reviews. He had received regular raises and performance bonuses, including a bonus some two or three weeks before his termination, and, in fact, had been awarded stock options on December 17, 1998, less than three months before he was terminated.
He testified that his career plan had always been to work in the restaurant business for a period and then to go into the food service business for himself. Again, without contradiction, he testified that he had made those plans know to his employers during the entire period of his employment. Eventually, early in 1999 he made known to one of his supervisors that he had located a suitable place for him to start his own business, but that he would remain in the defendant's employ for an ample period of time up to eight months. Soon afterward, on March 3, 1999, he met with an officer of the defendant corporation who asked him to resign voluntarily at a meeting, in which, again without contradiction, the plaintiff said he was treated so abruptly and disrespectfully that he became angry. When he declined to resign voluntarily, he was fired. At this time he testified without contradiction that he was advised by the defendant that he was being terminated for cause.
At the time, the plaintiff was an employee at will. Except for the provision in the Option Agreements terminating them immediately if the plaintiff's employment was terminated for cause, the notice that he was terminated for cause was gratuitous. The jury was free to infer, as the plaintiff, himself, concluded, that the defendant considered the Option Agreements to have been terminated immediately on March 3, 1999. Given the circumstances of the plaintiff's discharge and the otherwise gratuitous notice of his termination for cause, the jury could conclude, as it must have, that the defendant conveyed by word and act that it had no intention whatever to honor its obligations in the Option Agreements. As a result the jury responded "YES" to Interrogatory 2: "Does the jury find that the plaintiff has proved by a fair preponderance of the evidence that the defendant is guilty of an anticipatory breach of each of the option agreements held by the plaintiff before the notice period in the agreement had expired?"
This Court concludes, as a matter of law, that there was ample evidence to submit the question of anticipatory breach to the jury. Furthermore, considering the same evidence, and drawing its own inferences independently of the jury's verdict, the Court finds that, although it might not have agreed with the jurors' response, there was ample room for reasonable minds to differ in their answer to the requested finding.
The defendant also argues that, notwithstanding the jury's finding that the defendant had anticipatorily breached the Option Agreements, as matter of law, the plaintiff could not bring this claim because he failed to exercise the options or bring this action within the period of three months following his termination. The defendant contends that the defendant's anticipatory breach did not excuse the plaintiff from exercising the options by a timely written notice. Stated another way, the defendant's position is that in case of an anticipatory breach of a stock option a plaintiff must either attempt to exercise the option or bring suit before the option expires.
The defendant relies heavily on Lucente v. IBM, 146 Supp.2d 298 (S.D.N.Y. 2001) rev'd on other grounds 310 F.3d 243 (2d Cir. 2002). Like this case that one, too, involved employee stock options. Like this case in that one, too, the employee was suing for the loss he sustained when the employer refused to honor his stock options after his employment terminated. In that case, too, the trial court found that the defendant had breached its obligations to the plaintiff when it cancelled his stock option awards. The issue before that court was the date when the value of the option was to be established. Like this case, the stock options on the date of the wrongful cancellation were "under water." The trial court in Lucente pointed out that, where stock options are concerned, the date of performance which would fix the date of valuation is "trickier" than in the ordinary commercial contract. In that case the court held that in order to fix a date of non-performance the plaintiff was required to exercise the options. The court ruled, as a matter of law, that in order to fix a date for valuation of the option the holder is required to attempt to exercise the option before it has expired. One possibility considered and rejected by the court was that the trial jury could determine the date upon which the plaintiff would have exercised the option if it had not been wrongfully repudiated. The court rejected that theory as a matter of law saying:
 "Where a plaintiff proceeds under a theory of anticipatory breach of contract in a case involving stock options, he must take some affirmative action to set the date of the breach.
He cannot simply do nothing and ask a jury to infer when he might have done something. Just as the stock option differs from other contracts in that the optionee gets to decide when performance is due, so a plaintiff in a stock option case has different responsibilities than does a plaintiff in a standard contract case. The holder of an option can set the time for performance, but he must take affirmative steps to do so, or the option expires and he loses his rights under it. To ask a jury to speculate as to whether and when an option would have been exercised is impermissible — especially where, as here, such speculation could resurrect options that long ago expired." Lucente, supra, 146 F. Supp.2d, at 312. (Emphasis supplied.)
The plaintiff in the Lucente case argued that the case of Hermanowski v.Acton Corp., 580 F. Supp. 140 (E.D.N.Y. 1983) aff'd 729 F.2d 921 (2d Cir. 1984) would permit him to recover damages for unexercised options after they had expired. In Hermanowski the defendant cancelled stock options issued to the plaintiff as part of the plaintiff's resignation as a director and officer of the defendant corporation. The plaintiff attempted to exercise his option in part as to only 10% of the stock subject to the option. When the defendant refused to issue the stock, it was held to be in breach of the option, not only as to the 10% as to which the plaintiff had attempted to exercise the option, but also the 90% as to which he had not. The court ruled:
 "There was no necessity for the plaintiff to demand the balance of the shares which, under the circumstances, would have been a futile and meaningless gesture. "Hermanowski, supra, 580 F. Supp., at 144.
The Lucente court distinguished the Hermanowski opinion by pointing out that the plaintiff in Hermanowski had attempted to exercise the option in part, while the plaintiff in Lucente had made no effort to exercise any part of the option.
 "I do not read Hermanowski as creating a rule that futility will be presumed from a cancellation letter. Rather, it creates a rule that futility may be presumed from a demand for partial performance and refusal. . . .
 "Because Lucente was required to exercise his options — or at least some of them — to set the breach, this Court will not allow a jury to invent a hypothetical date on which plaintiff would have exercised his options, absent defendant's breach." Lucente, supra, at 313-14.
The plaintiff argues that this Court can accept the rule inHermanowski to the extent that the exercise of an option may be excused if such exercise can be demonstrated to be futile. He says that an attempt to exercise a part of an unexpired option if refused by the optionor is one way to demonstrate that futility, but not the only way. He also points out that part of the problem in Lucente and Hermanowski was the extended "shelf life" of some of the options involved. In Lucente's case up to ten years (146 F. Supp.2d, at 308), and in Hermanowski's five years (580 F. Supp., at 143). In this case the plaintiff's options promptly terminated three months after the termination of his employment, a relatively brief "shelf life."
The defendant contends that the Lucente and Hermanowski cases stand for the proposition that a plaintiff whose employee stock options are wrongfully prematurely repudiated has only two alternatives: (1) attempt to exercise the options or (2) bring suit before they expire. Since the plaintiff here did neither his claim must fail. The plaintiff urges that the only concern before the Courts in the Lucente and Hermanowski cases was the fixing of the date when damages could be assessed. The exercising of the options or the commencement of suit would, of course, fix a date on which damages could be assessed. He points out that, because of the short post-employment life of these options, and the very brief period close to the expiration of the options when they were "above water," a fact finder could readily fix a date during that brief "window" when damages can be assessed.
This Court agrees with the plaintiff that he was entitled to treat the defendant's repudiation of the Option Agreements as an anticipatory breach on March 3, 1999, when the defendant purported to terminate his employment for cause. He was entitled to sue immediately. It is well settled that damages for breach of contract are such as will put the injured party in as good a position as he would have been in had the contract been fully performed. Riley v. St. Germaine, 723 A.2d 1120, 1122 (R.I. 1999). Had the defendant here performed its obligation to keep its stock sale offer open for ninety days, the plaintiff could have exercised it profitably for the last nine or so of those ninety days. The defendant wrongfully deprived the plaintiff of those profits. For that loss the defendant must compensate him. Nothing in Lucente v. InternationalBusiness Machines Corp., 310 F.3d, at p. 262-63, applying New York law, persuades this Court otherwise
The plaintiff testified, without contradictions, that the only reason he did not exercise the options within the three month window was that he believed that the defendant was claiming that it had fired him for cause. Therefore, he felt that the defendant regarded the options as terminated. He further credibly testified that he would have exercised the options, if he thought he could have, during the 90 days after he was terminated. He said he followed the value of the shares in the market where they were traded and had the financial ability to have exercised the options.
The plaintiff produced evidence, also uncontradicted, that for only the last nine days of the ninety day window for exercise of the option did the market value of the shares exceed the option price. (See Plaintiff's Exhibit 19.) It does not take speculation to conclude that a reasonable person in the plaintiff's position would have exercised the options sometime during the last nine days of their ninety-day life, during which they were "above water," and before they sank irretrievably.
This Court can conceive of no earthly purpose in requiring the plaintiff to have engaged in the purely ritualistic exercise of one of the options with respect to as little as a single share with the certainty it would be refused in order to preserve his claim for readily measurable damages. Since the defendant was guilty of an anticipatory breach of the Option Agreement, that breach was a continuing breach from day-to-day during the short unexpired term of the options. It appears ironic that the defendant now seeks to penalize the plaintiff for his reliance on its affirmation that he was fired for cause. It now argues, in effect, that he should have known better than to believe what it said, but, because he relied on it and failed to engage in the futility of exercising the options, he must lose the benefit of their option promises.
For all the foregoing reasons the defendant's renewed motion for judgment as a matter of law pursuant to Rule 50 is DENIED.
The Court has engaged in an extensive review of the evidence presented to the jury in passing on the defendant's motion for judgment as a matter of law. Suffice it to say that, although the Court has some misgivings about the weight of the evidence, on careful consideration there is room for reasonable minds to differ. The plaintiff was the only witness to testify. The relevant and material evidence he presented was uncontradicted. His credibility was unimpeached. His measured description of the defendant's conduct in terminating his employment could well have lead reasonable minds to conclude that it would have been an absolute waste of time for him to so much as think about exercising the options. This Court concludes that the verdict does substantial justice and should not be disturbed.
The defendant has argued to the Court that it should correct an error of law in the admission of Plaintiff's Exhibit 18 into evidence by ordering a new trial. That exhibit is a copy of the decision of a Referee for the Board of Review of the State Department of Labor Training regarding the plaintiff's application for unemployment compensation benefits. According to the decision, the defendant had appealed from a decision by the Director that the plaintiff was discharged under non-disqualifying circumstances. In other words, the defendant was pursuing its claim that the plaintiff was discharged for "misconduct" under the Act. While it is true that the "for cause" provision in the Option Agreements may be different from "misconduct" under the Act, surely misconduct was a form of justifiable cause for termination. The plaintiff had to prove in this case that he was not in fact discharged for cause. Exhibit 18 tends to prove that he was not guilty of at least one form of such cause. This Court found the exhibit to be relevant on the issue of whether the plaintiff's termination was in fact for cause or not. The Court also regards the exhibit as relevant to the defendant's state of mind at the time of his discharge that the plaintiff was being terminated for cause, and wanted the plaintiff to understand it. On reconsideration the Court is not sensible of error in admitting the exhibit.
This Court has concluded that any prejudice to the defendant by the admission of the exhibit is out-weighted by its relevance to material issues. To the extent it hurts the defendant, it is a self-inflicted wound.
The defendant's Motion for a New Trial under Rule 59 is DENIED.