Climaco **GUZMAN** et al.

v.

**JAN–PRO CLEANING SYSTEMS, INC.,** et al.

**No. 2002–712–Appeal.**

Supreme Court of Rhode Island.

Nov. 21, 2003.

---

Paul L. Foster, Lincoln, for Plaintiff.

Thomas Dickinson, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

In this breach-of-contract action, the defendants, Jan–Pro Cleaning Systems (Jan–Pro) and Carol McLennan (McLennan) (collectively, the defendants) appeal from a Superior Court judgment entered after a nonjury trial in favor of the plaintiff, Climaco Guzman (the plaintiff).[1]

---

1. Although Climaco's wife, Cielo Guzman, also was named as a plaintiff, she did not

On August 23, 1995, plaintiff entered into a commercial janitorial services franchise agreement with defendants for a contract price of $3,285. Within 120 days of execution of the agreement, defendants promised to furnish plaintiff with:

"a Franchise Plan that will consist of one (1) or more customer account(s) located in the Franchisor's Metropolitan Statistical Area (SMSA) amounting to $8,000.00 gross volume per year. In the event that Franchisee rejects any customer accounts which are provided as part of this Franchise Plan or subsequently discontinues servicing such accounts, then Franchisor shall be deemed to have fulfilled its obligations hereunder."

The parties agreed that:

"No portion of the franchise fee is refundable except and to the extent that the Franchisor, within 120 business days following the date of execution of the Franchise Agreement, fails to provide accounts with gross annual billings equal to the annual dollar amount of the Franchise Plan level contracted for."

On February 19, 1996, 130 days after execution of the agreement, plaintiff wrote to defendants and demanded a full refund after asserting that they had breached the aforementioned provision. As a result of defendants' effort to mollify plaintiff, the parties executed a supplemental agreement on February 28, 1996, in which McLennan guaranteed "two accounts grossing $12,000 per year in income * * * within a fair and logical travel radius of each other." Thereafter, on March 19, 1996, McLennan signed a mutual release agreement in her capacity as vice president of Jan–Pro. In it, defendants agreed to refund plaintiff's deposit and release him from the franchise agreement in return for his mutual release of defendants. The plaintiff did not sign this document.

On September 4, 1996, plaintiff filed the instant breach of contract action, seeking damages for failure to provide the business accounts called for in the franchise agreement and for failure to return the franchise fee. In addition, plaintiff sought compensatory and punitive damages for defendants' fraudulently misrepresenting the corporation's franchise prospects.

At the conclusion of the nonjury trial, the trial justice found in favor of plaintiff.[2] He found that McLennan was Jan–Pro's alter ego, that defendants had breached the contract, had committed fraud, and were jointly and severally liable for payment of the damages. Specifically, he found:

"at the time that Plaintiff was promised a franchise plan, * * * the implication in such a promise that the franchisor had an ability to furnish those accounts was false, fraudulent, [and] misleading. It constituted fraud under the [Rhode Island Franchise Investment] Act, but I can further find that the failure to make such a material disclosure in such an important business transaction to the Plaintiff was an act of fraudulent concealment for this franchisor not to have disclosed to this Plaintiff that it didn't have any accounts for him at the time and couldn't furnish them, which amounts to a fraudulent concealment with patent intent to deceive."

The trial justice awarded damages in the amount of $120,000, plus statutory interest and costs. He also awarded attorney's fees in the amount of $7,500. The defendants timely appealed.

---

participate in the trial and the judgment was entered only in favor of Climaco.

**2.** Only plaintiff testified at trial.

The defendants first assert that the trial justice erred in finding a breach of contract because plaintiff relieved them of any responsibility under the contract when he refused to service an account that they had provided.

■ "This Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Macera v. Cerra,* 789 A.2d 890, 892–93 (R.I.2002) (quoting *Harris v. Town of Lincoln,* 668 A.2d 321, 326 (R.I.1995)).

■ The undisputed evidence demonstrates that defendants failed to perform their obligations under the franchise agreement within the prescribed 120 days. Notwithstanding defendants' bald assertions to the contrary, plaintiff's testimony revealed that he had not abandoned his obligations under the agreement by refusing to service any accounts. Consequently, the trial justice did not err in finding that defendants had breached the contract.

The defendants next contend that the trial justice erred in finding that they had committed fraud. We disagree.

■ We have stated previously that "[f]raud 'vitiates all contracts.'" *Bogosian v. Bederman,* 823 A.2d 1117, 1120 (R.I. 2003) (quoting *Travers v. Spidell,* 682 A.2d 471, 472 (R.I.1996) (per curiam) and *LaFazia v. Howe,* 575 A.2d 182, 185 (R.I.1990)). Under common law, where "one is induced to enter into a contract based upon a fraudulent statement from the other party to the contract, then the party who has been fraudulently induced is not bound by the contract." *Id.* (quoting *Bjartmarz v. Pinnacle Real Estate Tax Service,* 771 A.2d 124, 127 (R.I.2001) (per curiam)). "To establish a prima facie case of common law fraud in Rhode Island 'the plaintiff must prove that the defendant "made a false representation intending thereby to induce plaintiff to rely thereon," and that the plaintiff justifiably relied thereon to his or her damage.'" *Zaino v. Zaino,* 818 A.2d 630, 638 (R.I.2003) (quoting *Women's Development Corp. v. City of Central Falls,* 764 A.2d 151, 160 (R.I.2001)).

General Laws 1956 § 19–28.1–17 of the Franchise Investment Act is broader than the common law. Section 19–28.1–17 provides that:

"In connection with the offer or sale of a franchise it is unlawful for a person, directly or indirectly, to:

"* * *

"(2) Make an untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading;

"(3) Engage in an act, practice, or course of business which operates or would operate as a fraud or deceit on a person[.]"

The trial justice found that Jan–Pro and McLennan, as its alter ego, did not have "any ability at the time to furnish the Plaintiff with any accounts that would meet the requirements of the Agreement." As previously stated, he also found that the "false, fraudulent, misleading" promises made to plaintiff "constituted a fraud under the Act" and that the material omissions and inability to provide the promised accounts constituted "a fraudulent concealment with patent intent to deceive."

■ According to plaintiff's undisputed and uncontroverted testimony, he signed both the franchise agreement and the supplemental agreement because he believed McLennan's guarantee to provide him with the promised accounts and to return the

fee if she was unable to fulfill her promise. The record reveals that plaintiff paid the requisite franchise fee and that defendants failed to fulfill their obligations under the contract. In view of the record before us, in particular, defendants' course of conduct in repeatedly guaranteeing the provision of accounts that they apparently had no ability or intention to deliver, we concur with the trial justice's finding that defendants committed fraud under the act.

The defendants final allegation of error is that the trial justice improperly awarded plaintiff his contractually guaranteed gross revenues over ten years and that even if pecuniary damages were appropriate, they should have been limited to plaintiff's net lost profits. They maintain, however, that the liquidated damages provision in the franchise agreement limited plaintiff's damages simply to a refund of the $3,285 franchise fee and they rely upon *Chapman v. Vendresca,* 426 A.2d 262 (R.I.1981) for support of this proposition. They further assert that the trial justice erred in failing to reduce the final award to its present-day value.

In *Chapman,* 426 A.2d at 264, we concluded that when there was "no allegation, nor was there evidence, of fraud, bad faith, illegality, misconduct, or any other factor that might alter the legal relationship of these parties[,]" plaintiff only was entitled to the return of his deposit. In the case before us, the trial justice specifically made a finding of fraud against defendants. Such fraud altered the legal relationship between the parties and warranted a damages award in excess of the franchise fee paid by plaintiff. The trial justice determined that pecuniary damages were appropriate, and did not award any punitive damages.

■■■ "[T]he standard of review of a trial justice's findings on damages is quite deferential." *Riley v. St. Germain,* 723

A.2d 1120, 1122 (R.I.1999) (per curiam). "[I]t is well settled that a court may award damages for breach of contract to place the injured party in as good a position as if the parties fully performed the contract." *Id.* "This Court has held that in order to recover future lost profits in an action for breach of contract, a plaintiff must establish the loss with 'reasonable certainty.' " *Sweet v. Pace Membership Warehouse, Inc.,* 795 A.2d 524, 529 (R.I.2002) (quoting *UST Corp. v. General Road Trucking Corp.,* 783 A.2d 931, 941 (R.I.2001)). Accordingly, " '[t]he amount of damages sustained from a breach of contract must be proven with a reasonable degree of certainty, and the plaintiff must establish reasonably precise figures and cannot rely upon speculation.' " *Marketing Design Source, Inc. v. Pranda North America, Inc.,* 799 A.2d 267, 273 (R.I.2002). In calculating damages for future lost profits, anticipated expenses should be deducted from anticipated revenues. *See Blue Ribbon Beef Co. v. Napolitano,* 696 A.2d 1225, 1229 (R.I.1997).

■■■ In calculating the plaintiff's damages, the trial justice considered the evidence before him. That evidence consisted only of the plaintiff's anticipated gross revenues and did not refer to his anticipated expenses. Consequently, the trial justice was unable to calculate the plaintiff's future net lost profits with a reasonable degree of certainty and erred in attempting to do so from the limited evidence before him. Accordingly, we are constrained to remand the case to the Superior Court for a determination of the plaintiff's reasonable damages for future lost profits. In accordance with the general rule, and upon the presentation of appropriate evidence, such damages should be discounted to obtain their present-day value. *See Kay v. Menard,* 754 A.2d 760, 771

(R.I.2000); *Blue Ribbon Beef Co.*, 696 A.2d at 1230 n. 4.[3]

Consequently, and for the foregoing reasons, we affirm the judgment finding the defendants liable for fraud, but vacate the damages award and remand the case to the Superior Court for a new trial on damages.

---

**3.** The defendants do not claim, nor is there any evidence in the record, that the trial justice erred in calculating attorney's fees; consequently, we will not disturb that component of the award.