[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court for a determination of the damages due Plaintiff, Climaco Guzman,[1] from Defendants, Jan-Pro Cleaning Systems, Inc. and Carol McLennan pursuant to a decision from the Rhode Island Supreme Court in Climaco Guzman,et al. v. Jan-Pro Cleaning Systems, Inc., et al., 839 A.2d 504
(R.I. 2003). Originally, the matter was tried before a Justice of the Superior Court who found that the Defendants breached their contract with and defrauded the Plaintiff.[2] He then awarded Plaintiff damages of $120,000, plus an attorney's fee of $7,500. The Supreme Court affirmed the finding that the Defendants were liable for fraud, and also upheld the $7,500. attorney's fee but reversed the damage award because it failed to reflect expenses that the Plaintiff would have incurred in the operation of his business. It stated:
 "Consequently, the trial justice was unable to calculate the Plaintiff's future net lost profits with a reasonable degree of certainty and erred in attempting to do so from the limited evidence before him. Accordingly, we are constrained to remand the case to the Superior Court for a determination of the Plaintiff's damages for future lost profits. In accordance with the general rule, and upon the presentation of appropriate evidence, such damages should be discounted to obtain their present-day value."
 Guzman, et al. v. Jan-Pro Cleaning Systems, Inc., et al. Id.
On the damage retrial which spanned three days, this Court heard the testimony of the Plaintiff and both sides' expert witnesses, considered all the exhibits introduced into evidence and then reviewed pre and post trial memoranda.
Since this is a civil action, the burden is on the Plaintiff to prove its claim by a preponderance of the evidence. "It is well settled that a Court may award damages for breach of contract to place the injured party in as good a position as if the parties had performed the contract." Riley v. St. Germain,723 A.2d 1120 (R.I. 1999). Damages for lost profits must be established with reasonable certainty (UST Corp. v. General Road TruckingCorp., 783 A.2d 931 (R.I. 2001)), and with new businesses, specific evidence is needed in order to meet the same burden that applies to established businesses. Beverly Hills Concepts, Inc.v. Schatz and Schatz, Ribicoff and Kotlin, et al., 717 A.2d 724
(Conn. 1998). For an unestablished business such as this one, expert testimony about identical or similar businesses operating under the same market conditions is "sufficient basis for proving lost profits." No Ka Oi Corp. v. Nat'l 60 Minute Tune, Inc.,863 P.2d 79 (Wash. 1993). The Court agrees that the expert testimony presented at trial is key to the resolution of this matter. Plaintiff, through his expert Anthony Marciano, C.P.A., contended that his future lost profits discounted to their present-day value were $104,108. In reaching his conclusion, Marciano relied on generally accepted accounting principles, and did not include labor, payroll taxes or mileage into the operating costs of Plaintiff's business. After finding that Plaintiff's profit margin for the first three years of the contract would have been 81.59% and for years four through ten, 75.35% for a total of $76,849, he then added the cost of Plaintiff's personal income taxes into his calculation to reach a total lost profit of $104,108. Marciano testified that he relied on the financial records of three clients that engaged in the commercial cleaning business to assist him in reaching his opinion. Only one of them was a small operator functioning as a sole proprietor with sales of less than $100,000.
Defendant presented two experts, Raymond LaPointe, an expert in the commercial cleaning business, and Peri Ann Aptaker, Esq., an expert in business valuations. LaPointe testified that the typical cost of a cleaning franchise as a percentage of revenue were: (a) labor 55%, (b) franchise fee 8%, (c) management fee 5%, (d) insurance 5.5%[3] (e) payroll taxes 7%, (f) supplies 1.5%, (g) repairs and maintenance 2%, (h) mileage 6.9%. He then applied those figures to a weekly gross revenue of $230 ($12,000 ÷ 52 weeks) and found a net profit of $19 per week or 8.2% profit for years four through ten of the contract, and a net profit of 11.2% for years one through three, when Worker's Compensation Insurance was not required. Ms. Aptaker, then using the figures presented by LaPointe and applying the principles of business valuations, calculated the Plaintiff's total lost profits at $12,967.46. She testified that labor costs for an owneroperated franchise are business expenses to be deducted from gross income and that the owner's reasonable salary is an overhead expense.
In weighing this conflicting testimony, the Court is satisfied that Defendants' two experts are far more credible in the conclusions they reach. The foundation they present, based on LaPointe's many years of experience in the cleaning business, along with Aptaker's vast knowledge of business valuations, far outweighs the testimony of Marciano, which relies on three cleaning businesses, only one of which is of the Plaintiff's size. Likewise, the significant difference in results comes from the valuation approaches used by them. By relying on accounting principles, Marciano excluded labor as a cost and then tacked on income taxes to his final figure. Aptaker, on the other hand, reached her conclusion using business valuation principles which include the Plaintiff's labor as a cost to be deducted from his gross revenues. That Defendants' approach is correct can be seen in the annual profits they project of between 8% and 11% as compared to Plaintiff's projected profits of between 75% and 80%. While the net to Plaintiff after his investment is not great, it reflects the risk that goes along with any entrepreneurial venture and compared with the stock market, or even bank accounts, over the last few years, is not insignificant. Interestingly, it is even greater than the industry profit for commercial cleaning businesses with under one million dollars in annual sales of 2% to 4% as found in Defendants' Exhibit G.[4]
 Finding of Fact and Conclusions of Law
Accordingly, after careful review of all the evidence introduced, the testimony of the witnesses and memoranda submitted by the attorneys, the Court makes the following finding of fact and conclusions of law.
1. Based on their experience and the valuation approach they used, Defendants' experts were more credible than Plaintiff's.
2. The testimony of Defendants' witnesses clearly establishes that labor is an ordinary expense in an owner-operated cleaning business and that profit equals the remainder after all such expenses are subtracted from gross revenue.
3. Generally accepted business valuation principles, which include labor as an ordinary expense, represent the preferred and better approach to lost business profits as compared to generally accepted accounting principles.
4. The Rhode Island law of damages does not provide for compensation for projected tax liability on lost profits.
5. The profit margin of between 8.2% and 11.2%, as testified to by Defendants' experts, are consistent with industry averages of 8%-10% and even higher than the industry profit margins found in Defendants' Exhibit G.
6. In accordance with the Supreme Court's instructions regarding the calculation of damages, Defendants' business valuation expert correctly took the facts testified to by their cleaning business expert, adjusted them to obtain their present-day value, and concluded that Plaintiff's total lost profits are $12,967.46.
7. Judgment should enter in favor of Plaintiff for $12,967.46 plus interest, along with the previously imposed attorney's fee of $7,500.
Counsel shall prepare an order consistent with this decision.
[1] Although Climaco's wife, Cielo Guzman, also was named as a Plaintiff, she did not participate in the first trial and the judgment was entered only in favor of Climaco.
[2] As background, on August 23, 1995, Plaintiff entered into a commercial janitorial services franchise agreement with Defendants for a contract price of $3,285. The parties then executed a supplemental agreement on February 28, 1996, in which Defendants guaranteed two accounts grossing $12,000 per year in income within a fair and logical travel radius of each other. On September 4, 1996, Plaintiff filed the instant breach of contract action, seeking damages for failure to provide the business accounts called for in the franchise agreement and for failure to return the franchise fee. Plaintiff sought compensatory and punitive damages for Defendants' fraudulent misrepresentation.
[3] While the witnesses differed on the percent to be attributed to insurance, the Court finds that Plaintiff's expert had less foundation for his conclusion than Defendants'. Regardless, any adjustment would be insignificant.
[4] Plaintiff, in his post trial memorandum suggests that this Court can consider punitive damages as prayed for in the initial complaint. However, a review of the Supreme Court's decision makes clear that the only issue before this Court is "the determination of Plaintiff's reasonable damages for future lost profits."