DECISION
This matter came on for trial before the Court, jury waived.
 Findings of Fact
In late 2002 plaintiff, Renee Gwaltney of Westerly, Rhode Island, entered into an agreement with defendant, Tammy Heller to purchase and operate a retail clothing business in Westerly, Rhode Island. Ms. Gwaltney and Ms. Heller agreed to own and operate the store equally. They would each work at the stores, contribute one-half of the capital investment and receive one-half of the returns. Although Ms. Gwaltney was seventeen at the beginning of the relationship, her parents consented to the endeavor, even arranging for Ms. Gwaltney's investment to be transferred from accounts originally intended for her education.
The arrangement prospered for almost two years. In the summer of 2004, Ms. Gwaltney and Ms. Heller were operating two stores under the trade name of "Kisses" in Westerly.
In the fall of 2004, the relationship between the two soured as concerns grew for the handling of the finances and inventory. At that time, Ms. Gwaltney, her mother Margaret Gwaltney, and Tammy Heller met to resolve the differences. Ms. Heller agreed to buy out Renee Gwaltney's share for a one-time, upfront cash payment of $20,000. On November 20, 2004, a check for $20,000 was written by Tammy Heller to Margaret Gwaltney on Renee's behalf (Exhibit 8). Margaret Gwaltney had negotiated the buy-out and loaned some of the money to Renee for the acquisition.
Though never pressing an affirmative defense or counterclaim, Ms. Heller's defense seems to be that of duress or coercion. She acknowledged writing the check but claimed the meeting of November 20 "was not a conversation but an attack". She claims that Renee had already taken the records from the store and the Gwaltneys were threatening prosecution, even though the stores had made limited profits. Hence, she explained, she wrote the check "to get them out of my face, to get them to go away."
On November 22, 2004 Renee Gwaltney received a letter indicating that there had been a stop-payment placed on the check. She then checked the bank account for the business, and discovered that her name had been removed from the bank account. The Gwaltneys also discovered that the locks had been changed on the remaining store.
In November, 2004 Renee Gwaltney instituted this action claiming breach of contract, wrongful exclusion of the partnership and a breach of the partnership agreement.
 Analysis and Conclusions of Law
As each of the parties contributed money for a common purpose and carried on the enterprise for over a year, a contract clearly existed for operation of the retail stores in October, 2002. There was an offer, acceptance, mutuality of purpose and consideration. This contract lasted at least through November, 2004, when the parties entered into a second enforceable contract. The second contract was the agreement that Ms. Heller would acquire Ms. Gwaltney's interest in the store for the payment of $20,000. Ms. Heller's failure to pay the $20,000 was a clear breach of the agreement to purchase. The elements for a valid contract are a valid offer, acceptance, and consideration, and intent to be bound by the terms of the agreement. SeeWeaver v. American Power Conversion Corp., 863 A.2d 193, 198
(R.I., 2004). Renee Gwaltney met her burden of establishing the existence of a contract.
A second contract was formed for the buyout. The buyout terms were consented to, Ms. Heller wrote a check, and Ms. Gwaltney agreed to relinquish her ownership interests. There was an offer, acceptance and agreement on the terms of the contract. Ms. Heller's payment of the $20,000 check constituted consideration. Ms. Heller's failure to accept the check by placing a stop payment upon it, constituted a breach of the contract.[1]
Accordingly, Ms. Gwaltney has met her burden to establish that Ms. Heller breached the 2004 contract. See Gorman v. St.Raphael Academy, 853 A.2d 28 (R.I. 2004).
The contracts contain an implied covenant of good faith and fair dealing between the parties. Dovenmuehle Mortgage, Inc. v.Antonelli, 790 A.2d, 1113, 1115, (R.I. 2002).
Though Ms. Heller claimed she was somehow forced into writing the check, her testimony does not convince the Court that she was somehow justified in stopping payment and breaching the contract. Though emotional, Ms. Heller appeared knowledgeable, logical and well-spoken throughout her testimony. Though this was clearly a difficult time in her life, her failure to abide by her promise was not justified. She failed to meet the significant burden of proof required of her.
In Tinney v. Tinney, 770 A.2d 420 at 437 (R.I., 2004) our high court noted the law's reluctance to find a party was not acting upon their own free will:
 Specific undue influence cases tend to be lonely islands of facts in an ocean of law. . . . [The trial court should consider] the totality of circumstances, including the relationship between the parties, the physical and mental condition of the grantor, the opportunity and disposition of a person wielding influence, and his or her acts and declarations. (citations omitted.).
In applying this analysis this Court finds that Ms. Heller was competent and even defensive throughout the November 22 negotiation. Although all participants were troubled by issues in their personal lives, they recognized the importance of their dealings. While the Gwaltneys allegedly had control of the books, Ms. Heller had control of the store and continued to assert this control even after she stopped the payment. Viewing the facts as a whole, this Court concludes that no undue influence was asserted.
At trial, Renee Gwaltney failed to press two other counts, labeled as Wrongful Exclusion from the Partnership, R.I.G.L. section 7-12-33, and Dissolution of the Partnership, R.I.G.L. section 7-12-51(2). The exclusion, the lockout, occurred after the initial breach. R.I.G.L. section 7-12-33 provides for a mere accounting. Obviously, Ms. Gwaltney's remedies for the breach of the agreed buyout contract would obviate the need for an accounting, and Ms. Gwaltney is made whole.
R.I.G.L. section 7-12-51 sets forth the rules for dissolution of partnership assets including the priority of debts and the method of calculating payments. Ms. Gwaltney established at trial that parties had agreed on a buyout and seeks enforcement of the buyout agreement.
For Ms. Heller's breach, Ms. Gwaltney is entitled to damages. "[I]t is well settled that a court may award damages for breach of contract to place the injured party in as good a position as if the parties fully performed the contract." Guzman v. Jan-ProCleaning Systems, Inc., 839 A.2d, 504, 508 (R.I. 2003), quotingRiley v. St. Germain, 723 A.2d, 1120, 1122 (R.I. 1999). Renee Gwaltney bargained for a $20,000 buyout and this amount was agreed to by Ms. Heller. Accordingly, the amount of damages to be awarded to Ms. Gwaltney is $20,000.
The date of the breach of the contract was November 22, 2004. Accordingly, prejudgment interest is awarded from November 22, 2004 pursuant to R.I.G.L. chapter 92-1.
 Conclusion
Judgment shall enter for plaintiff, Renee Gwaltney and against the defendant, Tammy Heller on Count One of the Complaint. Renee Gwaltney is awarded $20,000 in damages. Ms. Gwaltney is also awarded prejudgment interest from November 22, 2004, post-judgment interest and court costs. Judgment is awarded to Tammy Heller in regard to Counts Two and Three of the Complaint.
[1] Though the court finds that a new contract was entered in 2004 for the buyout and settlement, had the contract not existed Ms. Heller's changing of the locks and changing of the account would have constituted a breach of the 2002 contract.