This matter is before the Court on appeal from a Judgment of the Third Division District Court, after a trial de novo.
 Findings of Fact
On April 19, 2008, Andrew Daigle entered into a written agreement with Rhode Island Home Improvement (RIHI) to replace windows at his home in Portsmouth, Rhode Island. The total cost to Mr. Daigle, pursuant to the writing, was to be $4536. A $100 deposit was paid by Mr. Daigle at the time that the agreement was signed, and an additional payment of $2218 was due "at measure." Measuring for the proposed renovations was completed in April 2008, but no additional payment was tendered. The work was to be concluded by August 2008. Several attempts were made by RIHI to complete the work until Mr. Daigle instructed RIHI that he did not want the windows.
The agreement contained language defining the rights of the parties in the event of a default:
 Purchasers agree to pay all expenses incurred by RIHI, including reasonable attorneys' fees, in the event of any default hereunder by Purchaser(s). Refusal by Purchaser(s) to permit RIHI to proceed *Page 2 
with the Work shall entitle RIHI to payment from Purchaser(s) of a sum of money equal to 25% of the Contract Amount, as fixed, liquidated and ascertained damages, and not as a penalty, without further proof of loss or damages.
RIHI always intended to perform the contract. In order to obtain the project, RIHI paid a consultant a commission of $453.60, (15% of the contract price). It incurred additional costs in marketing, measuring, and loss of anticipated profit. Several attempts were made to receive payment prior to litigation, to no avail.
 Analysis
A contact exists, which is binding upon the parties. There was an offer, acceptance, mutuality of purpose, consideration and an intent to be bound by the terms of the agreement. See Weaver v. American PowerConversion Corp., 863 A.2d 193, 198 (R.I. 2004). Mr. Daigle breached the contract by failing to allow the construction to go forward, and tendering the agreed sums.
Alleging that RIHI incurred no real loss, Mr. Daigle challenges the validity of the liquidated damage clause. He relies on Howarth v.Feeney, 1992 WL 813502, R.I. Super., January 15, 1992, (No. P.C. 86-3543), which is clearly distinguishable. Here, Mr. Aurgemma of RIHI testified that RIHI paid its consultant for the sale, lost its anticipated profit and incurred other expenses. The Howarth Court found that Mr. Feeney "suffered no damages." Howarth, at 3.[1] Accordingly, the Court concludes that the liquidated damage amount of 25% of the contract is a fair and reasonable approximation of the real damages suffered by RIHI, rather than a penalty. *Page 3 
Our Supreme Court has consistently upheld liquidated damage clauses when the damage caused by the breach is difficult to estimate and the contract provisions set a reasonable forecast.
 It is generally held that where a contract is not for the mere payment of money and there is no certain measure of the damages which would naturally result from a violation of the agreement in question, the parties may fix upon a sum in the nature of liquidated damages which shall be paid as compensation for breach of the agreement. Muirhead v. Fairlawn Enterprise, 72 R.I. 163, 173, 48 A.2d 414, 419 (R.I. 1946), (citations omitted).
See also Cady v. IMC Mortgage Co., 862 A.2d 202 (R.I. 2004), applying Florida law, and Morash v. Depco, 1996 WL 937026 (R.I. Superior Court, 1996). In Guzman v. Jan-Pro Cleaning Systems, Inc., 839 A.2d 504 (R.I. 2003), the defendant-debtor urged that the liquidated damage clause of the contract be applied. While not critical of the clause, the Supreme Court noted that a fraud occurred; hence, the plaintiff-creditor was allowed to recover more than the liquidated damages clause allowed.Guzman at 508.
Indeed the Restatement analysis (referenced in Howarth) validates the use of a liquidated damage clause where, as here, it is a reasonable forecast of the compensation lost, not a penalty:
 § 356. Liquidated Damages And Penalties
 (1) Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.
 RESTATEMENT (SECOND) OF CONTRACTS, 2d § 356(1).[2] *Page 4 
Here, RIHI lost money. It paid a consultant to make the sale, it expended resources in marketing, measuring and seeking to collect. Of course, hopes of profit were dashed by Mr. Daigle's refusal to comply with the contract.
 Conclusion
The liquidated damage clause is reasonable and enforceable. Judgment is provided to RIHI against Mr. Daigle for $1034.00[3], plus interest and costs.
[1] Just one year before deciding Howarth, the same justice described a liquidated damages provision as "a powerful tool" to compel compliance. Keystone Elevator Co., Inc. v. Johnson and WalesUniversity, 2002 WL 169195, 9, R.I. Super., January 17, 2002, (No. C.A. 00-406, M.P. 00-767).
[2] The Howarth case cited Restatement (First) of Contracts, § 339, which is almost identical.
[3] Twenty-five per cent (25%) of the contract amount is $1134, less the $100 deposit is $1034.